# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANNON REEVES** | **CIVIL ACTION NO. 19-10766** |
| **VERSUS** | **SECTION "T"** |
| | **JUDGE GUIDRY** |
| **CITY OF NEW ORLEANS, ET AL.** | |
| | **MAG. DIV. (5)** |
| | **MAGISTRATE JUDGE NORTH** |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**MAY IT PLEASE THE COURT:**

Defendants,  the City of New Orleans ("City") and named Individual Defendants, Paul Noel, Jenerio Sanders, Walter Powers, Michael Harrison, Rannie Mushatt, and Arlinda Westbrook (collectively, "Individual Defendants"), through undersigned counsel, without waiving, and expressly reserving all defenses, motions, objections and arguments, file this Memorandum in support of their Motion to Dismiss Plaintiff's First Amended Complaint ("Amended Complaint") filed on February 5, 2020 (R. Doc. 63).  Similar to her  Original Complaint, Plaintiff's First Amended Complaint has failed to state a claim against the City and the Individual Defendants such that *all* of her claims against these Defendants should be dismissed.

Specifically, Plaintiff has expressly conceded that she cannot sustain her claims against the Individual Defendants under Title VII and the ADA, such that these claims should be dismissed, with prejudice.  Also, all of Plaintiff's §1983 claims are time barred, such that she cannot proceed against any of the Defendants pursuant to §1983.  Moreover, notwithstanding that her §1983 claims are time barred under relevant Fifth Circuit jurisprudence, the Individual Defendants are clearly protected by qualified immunity, and Plaintiff has not alleged specific facts to establish municipal liability on behalf of the City.  Finally, as outlined in detail in Defendants' Motions to

Dismiss Plaintiff's Original Complaint (R. Doc. 27, 38, and 66), which arguments are expressly referred to and incorporated herein, Plaintiff has wholly failed to state a claim against the City of New Orleans under Title VII and the ADA.  Accordingly, for all of the reasons asserted herein to dismiss Plaintiff's First Amended Complaint, and asserted in Defendants' Motions to Dismiss Plaintiff's Original Complaint, all of Plaintiff's claims against the City and the Individual Defendants should be dismissed.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

The Court is well-acquainted with the facts of this case as alleged by the Plaintiff.  Plaintiff, a former female police officer, filed suit on May 27, 2019, against the City and the Individual Defendants for alleged sexual harassment and hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, R. Doc. 1. at ¶¶ 7-9, and also for failure to accommodate and for retaliation under the Americans with Disabilities Act, as amended, 42 U.S.C. § 126, *et seq.*

The City and the Individual Defendants filed 12(b)(6) Motions to Dismiss (R. Doc. 27) on the grounds that the Individual Defendants were improperly named as defendants in this lawsuit under Title VII and the ADA; that her claims for discrimination and retaliation under Title VII and the ADA were untimely and legally baseless; and that Plaintiff had not properly exhausted her administrative remedies prior to filing suit against the City.  Prior to the Court's consideration of Defendants' Motions to Dismiss, on January 9, 2020, Plaintiff filed a Motion for Leave to Amend Her Original Complaint and File Her First Amended Complaint (R. Doc. 42).  Plaintiff also filed a Notice of Dismissal on January 9, 2020, pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure, dismissing Christopher Johnson and Stephanie Landry from this litigation.  (R. Doc 43).  Defendants opposed Plaintiff's Motion for Leave to Amend Her Original Complaint.  (R. Doc. 54).  The Court ordered oral argument on the Motion for Leave to Amend, stating at the

hearing that Defendants' arguments were more properly suited for a motion to dismiss.  (R. Doc. 70).  The Court allowed Plaintiff to file her Amended Complaint, by which she now attempts to assert Section 1983 claims against all Defendants for alleged sexual harassment and retaliation, as well as seeking exemplary and punitive damages.  R. Doc. 63 at ¶¶ 189, 191, 196.

### a.      Plaintiff's Original Complaint

Prior to filing her Complaint, on September 14, 2018, Plaintiff filed two charges with the EEOC against the New Orleans Police Department ("NOPD") alleging sex discrimination and Title VII retaliation.[1]   On May 27, 2019, Plaintiff filed her Complaint which purports to raise several of the same allegations in her EEOC Charges, and critically (as it relates to the Defendants' assertion that the Plaintiff failed to properly exhaust her administrative remedies), a number of new allegations.  *See* R. Doc. 1.  Plaintiff alleges that a Notice of Right to Sue was issued on February 25, 2019.  R. Doc. 1, ¶ 5.

### i.      Plaintiff's ADA Allegations in Her Original Complaint.

Plaintiff **now** alleges that she suffers from post-traumatic stress disorder, depression, and anxiety (R. Doc. 1 at ¶ 62 and R. Doc. 63 at ¶99) and that she gets severe migraine headaches that are triggered by fluorescent lights which limits her ability to perform her job.  R. Doc. 1 at ¶¶ 63-64; R. Doc. 63 at ¶¶100-101.  Plaintiff alleges that on July 13, 2015, a counselor treating Plaintiff wrote a letter requesting accommodations for Plaintiff's anxiety and depression and stated that Plaintiff would be best suited for a job involving low stress, consistent hours, and consistent working conditions; but, she claims that the request was ignored.  R. Doc. 1 at ¶ 65; R. Doc. 63 at ¶102.  Plaintiff also alleges that on September 24, 2015, Plaintiff's treating neurologist wrote a letter advising NOPD that Plaintiff was restricted from working under fluorescent lights due to her

---

[1]     Plaintiff's EEOC charges were filed as exhibits in accordance with Defendants' 12(b)(6) Motion to Dismiss (R. Doc. 27), and are refiled as Exhibits A-C hereto.

condition.  R. Doc. 1. at ¶ 68.  R. Doc. 63 at ¶105. Plaintiff allegedly provided the letter to Defendant Landry but Landry refused to read it.  *Id.*[2]  Plaintiff also alleges that in late 2016, she was moved to an administrative position in an office in the basement that was isolated and involved processing paperwork.  R. Doc. 1 at ¶ 75; R. Doc. 63 at ¶112.  Plaintiff claims that she preferred this position and that during the two months she worked under this condition, she did not miss any work.  *Id.*  R. Doc. 63 at ¶113.  But, Plaintiff alleges that she was transferred in February 2017 to the front desk at NOPD headquarters where the workplace was filled with fluorescent lighting and that she was not permitted to have a weapon at the front desk in violation of NOPD's policy.  R. Doc. 1 at ¶ 77; R. Doc. 63 at ¶115.  Plaintiff alleges that she had a conversation with Defendant Harrison about her migraines and accommodation, but he directed her to bring her request to the appropriate chain of command.  R. Doc. 1 at ¶ 79; R. Doc. 63 at ¶117.

### ii. Plaintiff's Sex Discrimination Allegations in Her Complaint.

Plaintiff also claims she was subjected to sexual harassment by Defendant Charles, her then supervisor, on February, March, June, and July 2016 in the form of oral comments and touching, R. Doc. 1 at ¶¶ 30-46; R. Doc. 63 at ¶¶26-45; and that she made an initial complaint regarding Defendant Charles' alleged conduct on November 23, 2016.  R. Doc. 1 at ¶¶ 22-23, 88; R. Doc. 63 at ¶18.  Plaintiff states that she initiated the complaint after a male NOPD officer, Troy Williams, filed a complaint against Defendant Charles for an aggravated battery and mentioned that Defendant Charles had been sexually harassing females in the unit.  R. Doc. 1 at ¶ 26; R. Doc. 63 at ¶22.  Plaintiff's complaint was investigated beginning in December 2016 by Defendant Johnson.  R. Doc. 1 at ¶¶ 61(f), 97; R. Doc. 63 at ¶62.  Plaintiff also allegedly reported the harassment to Defendant Price at the New Orleans Independent Police Monitor.  R. Doc. 1. at ¶

---

[2]    As stated above, on January 9, 2020, Plaintiff voluntarily dismissed Landry as a defendant in this lawsuit.

94; R. Doc. 63 at ¶133.  Plaintiff alleges that on December 7, 2016, she provided audio recordings of Defendant Charles to Defendant Johnson, the investigator.  R. Doc. 1 at ¶ 99; R. Doc. 63 at ¶¶138-139.  Plaintiff alleges that after she initiated her complaint on November 23, 2016, she worked for a month and a half under Defendant Charles' daily supervision until she complained to Cecilo Tabo, a licensed clinical social worker.  R. Doc. 1 at ¶¶ 110, 113; R. Doc. 63 at ¶152. Critically, Plaintiff acknowledges that Defendant Charles was transferred "within a few days after Plaintiff reached out to Tabo for help."  R. Doc. 1 at ¶ 114; R. Doc. 63 at ¶153.  Plaintiff claims that NOPD took a year to investigate her complaint against Defendant Charles.  R. Doc. 1 at ¶ 108. On August 1, 2017, Plaintiff supposedly had a meeting with Defendant Westbrook who informed her that her complaint of sexual harassment against Defendant Charles was not valid and that complaints of other women could not be considered.  R. Doc. 1 at ¶ 61(e); R. Doc. 63 at ¶155. Defendant Johnson, the investigator, was also present at this meeting.  R. Doc. 1 at ¶61(f). Plaintiff, however, admits that in November 2017, Defendant Charles received a one-day suspension as a reprimand for sexually harassing Plaintiff and was demoted from the rank of Sergeant to Police Officer.  R. Doc. 1 at ¶¶ 117-118; R. Doc. 63 at ¶156.  Plaintiff alleges that several Individual Defendants all failed to take action to adequately or properly train or supervise Defendant Charles or to prevent the incident or take corrective actions including implementing a policy on sexual harassment.  R. Doc. 1 at ¶¶ 61(b)-(f).

### iii.   Plaintiff's Retaliation Allegations in Her Original Complaint.

Plaintiff also alleges that she was retaliated against for making her complaint of sexual harassment in November 2016 against Defendant Charles and also for requesting ADA accommodations in 2015 and 2016.  R. Doc. 1 at ¶ 87.  Specifically, Plaintiff alleges that after she made her November 2016 complaint, a NOPD employee, Sergeant Kenneth Quetant, stopped speaking with her (R. Doc. 1 at ¶ 121); (R. Doc. 63 at ¶160), and that on July 21, 2017, two female

NOPD officers, Caroline Dalton and Angel Clemons, spoke loudly about "messy hos and bitches" making complaints.  R. Doc. 1 at ¶ 122; R. Doc. 63 at ¶161.  When Plaintiff confronted the two officers on July 24, 2017, they confirmed that they had problems with her because she was too messy getting people in trouble, gossiping, and recording people.  R. Doc. 1 at ¶ 123; R. Doc. 63 at ¶162.  Plaintiff also vaguely alleges that during unspecified times, unnamed male officers made comments to her such as "I better be careful around you or you'll file a complaint on me," that she should watch her back, and that male officers didn't want to work around her for fear of her filing a complaint against them.  R. Doc. 1 at ¶¶ 124-126.  Plaintiff also claims that NOPD failed to keep her complaint confidential or to protect her medical information.  R. Doc. 1. at ¶¶ 127-128; R. Doc. 63 at ¶¶166-167.  Plaintiff further alleges that Defendant Charles was unrepentant and falsely told other officers that her complaint was motivated by her being jilted by him, and that she had made video recordings of him at the gym.  R. Doc. 1. at ¶ 129; R. Doc. 63 at ¶168.  Plaintiff also alleges that Defendant Charles made inappropriate Facebook postings that were sexual in nature and that the NOPD did not take any action against him.  R. Doc. 1 at ¶ 130; R. Doc. 63 at ¶169.

Plaintiff alleges that after making her complaints in 2015 and 2016, she was transferred to several different positions, including the position that suited her requested accommodations in late 2016, but that she was transferred out of that position to work the headquarters' front desk in February 2017.  R. Doc. 1 at ¶ 137; R. Doc. 63 at ¶180.  Plaintiff also alleges that after making her complaints in 2015 and 2016, her pay was withheld on several occasions.  R. Doc. 1 at ¶ 138; R. Doc. 63 at ¶181.  Plaintiff further alleges that in January 23, 2018, her employer reported to her pension plan that she had been terminated from her job and that she discovered that no payments had been made to her pension since early 2015.  R. Doc. 1. at ¶ 139; R. Doc. 63 at ¶182.  Plaintiff alleges that these actions were taken after she complained that Defendant Albert allegedly

disclosed her medical information to his girlfriend.  R. Doc. 1. at ¶ 140.  Plaintiff alleges that she

was terminated on May 16, 2018, for inability to perform her job duties for medical reasons.  R.

Doc. 1 at ¶¶ 85, 132; R. Doc. 63 at ¶183.  As part of her original Complaint, Plaintiff requests

declaratory judgment relief that "Defendants have engaged in discriminatory conduct and sexual

harassment, and have violated federal and state law."  R. Doc. 1 at ¶ 146; R. Doc. 63 at ¶190.

Plaintiff also requests a wide range of damages including wages, compensatory, punitive, and

equitable relief.  R. Doc. 1 at ¶¶ 147-155; R. Doc. 63 at ¶¶190-200.

### b.    Plaintiff's Amended Allegations

Plaintiff does not assert new substantive *factual* allegations in her Amended Complaint,

and in fact, most of the allegations in Plaintiff's Amended Complaint are virtually identical to the

allegations contained in Plaintiff's original Complaint.  *Compare* R. Doc. No. 1 with R. Doc. No.

63.   However, in a baseless effort to avoid dismissal of her claims against the Individual

Defendants and the City, as part of her Amended Complaint, Plaintiff now attempts to assert claims

under §1983 and alleges that "the governmental entity knew or should have known of the offending

acts (sexual harassment) and failed to act."  R. Doc. 63 at ¶ 189.  Plaintiff further conclusively

asserts (without alleging specific facts) that department officials had actual or constructive

knowledge of, "a persistent, widespread practice of government officials or employees, *which,*

*although not authorized by official adopted and promulgated policy, is so common and well-settled*

*as to constitute a custom.*"  R. Doc. 63 at ¶ 189.  (Emphasis supplied).  Plaintiff then alleges, with

no specific facts, that Defendants were deliberately indifferent to federally protected rights

establishing "a direct causal link between the municipal policy and the constitutional deprivation"

existed herein, and that "the City of New Orleans' policy was a 'moving force' behind the

violation."  R. Doc. 63 at ¶ 189.  According to Plaintiff, the City's "policy of concealment of

complaints worked to deprive Plaintiff of her protected rights."  R. Doc. 63 at ¶ 189.  Plaintiff also

- 7 -

alleges that the City's "policy, practice and custom disregarded well-established law with regard to sexual harassment" and that "the absence of a sexual harassment policy worked to deprive Plaintiff of her protected rights."  R. Doc. 63 at ¶ 189.

Notwithstanding that Plaintiff has filed a 34 page Amended Complaint which is virtually identical to Plaintiff's Original Complaint other than her newly-asserted claims under §1983, Plaintiff's Amended Complaint clearly fails to state a claim under §1983 against the Individual Defendants, and cannot establish municipal liability on behalf of the City on her §1983 claims. Moreover, for the reasons outlined in detailed in Defendants' Motions to Dismiss, Plaintiff also cannot state a claim against the City under Title VII and the ADA.[3]  Thus, for all of the reasons outlined in this memorandum as well as in Defendants' memoranda in support of their previously filed Motion to Dismiss, all of Plaintiff's claims should be dismissed.

## II.    SUMMARY OF ARGUMENT

Dismissal of all claims with prejudice against these Defendants is warranted for the reasons outlined in detail in this memorandum and Defendants' previously filed memoranda.  Specifically, Plaintiff expressly asserts that she first approached the City about her claims in 2016; however, Plaintiff did not file suit until May 2019.  Therefore, on the face of Plaintiff's Original and

---

[3]     In her Amended Complaint, Plaintiff has a subsection entitled "Sexual Discrimination and ADA Employment Discrimination."  In her EEOC Charges, Complaint, and Amended Complaint, Plaintiff only alleged a cause of action for sexual harassment (hostile work environment) and not a claim for discrimination/disparate treatment under Title VII.  To the extent that Plaintiff attempts to argue that she has purported to allege discrimination/disparate treatment under Title VII (which is expressly denied based upon the allegations in Plaintiff's Original and Amended Complaints), such claim should also be dismissed *with prejudice* for failure to state a claim.  Under Title VII, disparate treatment discrimination addresses employment actions that treat an employee worse than others *based on a protected characteristic. See Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006) (emphasis supplied). In such cases, an employee must show discriminatory motive. *Id*. If an employee has no direct evidence of discrimination, then she must show that other similarly situated employees were treated more favorably. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). Here, Plaintiff has certainly not alleged direct evidence of discrimination and Plaintiff has also not alleged a *prima facie* case of discrimination under Title VII; specifically, that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) others outside the protected class were treated more favorably under nearly identical circumstances. *Butler v. Internal Revenue Service*, 73 Fed. Appx. 730, 732 (5th Cir. 2003) (citing *Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir. 1998)).

PD.28145644.2

Amended Complaints and under relevant jurisprudence, all of her claims against these Defendants under §1983 are time barred.  Also, the Individual Defendants are protected by qualified immunity. Plaintiff has also failed to specifically allege the existence of a municipal policy or widespread practice sufficient to establish municipal liability on behalf of the City.  For these reasons, Plaintiff's Section 1983 claims against the City and the Individual Defendants must fail.

As to Plaintiff's duplicative claims under Title VII and the ADA which are also contained in her original Complaint, Defendants previously addressed those claims extensively in their original Motions to Dismiss and reply memoranda, which are expressly referred to and incorporated herein pursuant to Rule 10 of the Federal Rules of Civil Procedure.  R. Doc. 27, 38 and 66.  For all of the reasons outlined here, as well as in Defendants' previously filed memoranda, Defendants' Motions to Dismiss Plaintiff's Original and Amended Complaints should be granted.

## III.    STANDARD OF LAW

A court reviewing a motion to dismiss for failure to state a claim must accept factual allegations as true and disregard "conclusory allegations or legal conclusions masquerading as factual conclusions."  *See, e.g., Abrams Shell v. Shell Oil Co.,* 343 F.3d 482, 486 (5th Cir. 2003); *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993).  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim [for] relief that is plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  Further, a complaint must "contain either direct allegations **on every material point necessary to sustain a recovery**" "or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citations omitted, emphasis supplied).  "Dismissal is proper if the complaint **lacks an allegation regarding a required element** necessary to obtain relief."  *Id.* (emphasis

supplied).   "The court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint."  *Id.*  (citations omitted).  A plaintiff must "plead specific facts, not mere conclusory allegations" to avoid dismissal for failure to state a claim. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  Under the relevant standard of review, Defendants' Motions to Dismiss should be granted as Plaintiff has still failed to adequately allege any valid claim against these Defendants.

IV.   **LAW AND ANALYSIS**

a.   **Plaintiff Concedes that the Individual Defendants Cannot Be Liable Under the ADA or Title VII.**

Plaintiff has now conceded that the Individual Defendants are not proper parties to this suit under the ADA or Title VII.[4]  As previously asserted by Defendants, the Individual Defendants are not "employers" for purposes of Title VII and the ADA.[5]  Claims under Title VII and the ADA against both the City and the Individual Defendants are duplicative and are properly subject to dismissal.[6]  Thus, as Plaintiff has already conceded to this Court, her claims against the Individual Defendants arising under Title VII and the ADA should be dismissed, with prejudice.

b.   **Plaintiff's Section 1983 Claims Are Time Barred.**

In a belated and baseless attempt to state a claim against the Individual Defendants, notwithstanding her admission that she cannot pursue claims against the Individual Defendants under Title VII and the ADA, in her Amended Complaint Plaintiff purports to state "a cause of action against the Individual Defendants pursuant to 42 U.S.C. §1983" (R. Doc. 63, p. 3). However, Plaintiff's Complaints make clear that any putative §1983 claims are clearly time-barred

---

[4]   *See e.g.*, Plaintiff's Opposition to Motion to Dismiss (R. Doc. 44) at p. 2; *see also* Plaintiff's Motion for Leave to Amend Complaint (R. Doc. 42) at pp. 2-3.

[5]   Defendants' arguments asserted in their original motions to dismiss and reply memoranda, R. Doc. 27, R. Doc. 38 and R. Doc 66,  are expressly incorporated herein *in extenso,* pursuant to Rule 10.

[6]   *See,* R. Doc. 27, footnotes 7 and 8.

under relevant jurisprudence.  The Fifth Circuit has expressly held that "[t]he statute of limitations for a §1983 claim is the same as the statute of limitations in a personal injury action in the state in which the claim arises."  *Victorian v. Cooper,* 538 Fed. App'x 570, 571 (5th Cir. 2013). Specifically, "[b]ecause no specified federal statute of limitations exists for §1983 suits, federal courts borrow the forum state's general or residual personal-injury limitations period."  *See e.g. Victorian v. Cooper*, 538 Fed. App'x 570, 571 (5th Cir. 2013);  *Edmonds v. Oktibbeha County*, 675 F.3d 911, 916 (5th Cir. 2012) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989).

In Louisiana, delictual claims are subject to a one-year prescriptive period.  La. Civ. Code art. 3492; *see also Hoover v. SOS Staffing Servs. Inc.*, 584 Fed. App'x 190, 191 (5th Cir. 2014) (recognizing a one year statute of limitations for Section 1983 claims brought in Louisiana and affirming the district court's dismissal of Section 1983 claim when plaintiff brought suit nearly three years after termination); *see also Detro v. Roemer*, 739 F. Supp. 303, 305 (E.D. La. 1990). As the Fifth Circuit held in *Burrell*, the standard governing the accrual of a cause of action under §1983 is determined by federal law.  Specifically, "the time for accrual is when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Burrell,* 883 F. 2d at 418 (citations omitted).  The statute of limitations begins to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Edmonds*, 675 F.3d at 916.

Here, Plaintiff's own Complaints make clear that any Section 1983 claims were time-barred at the time she filed her lawsuit against the City of New Orleans and the Individual Defendants on May 27, 2019.  Specifically, Plaintiff had "sufficient information to know that [she] had been [allegedly] injured," no later than November 23, 2016, when she first reported to her

employer concerning her alleged conditions of employment.  *See* R. Doc. 63, ¶ 18.  Moreover, as Plaintiff  establishes in her own pleadings, she had specific knowledge of any claims for alleged sexual harassment and discrimination in April 2017.  (R. Doc. 44-1).  By way of illustration, Plaintiff attached to her opposition to Defendants' original motion to dismiss her intake questionnaire which she submitted to the EEOC on April 20, 2017.  *See* R. Doc. 44-1, p. 1.  Thus, at the absolute latest, Plaintiff had specific and sufficient information to know of any purported injuries by  April 20, 2017.  Despite having this knowledge, Plaintiff did not file suit  until May 27, 2019, two years after she submitted her intake questionnaire with the EEOC (R. Doc. 1).  Even when Plaintiff filed suit, she did not assert any claims under §1983 until after Defendants filed their first  motion to dismiss seeking dismissal of all of Plaintiff's claim.  Therefore, <u>all</u> of Plaintiff's Section 1983 claims are time-barred, and should therefore be dismissed.  As the Fifth Circuit held in *Burrell,*  the accrual for Plaintiff's  claim of sexual harassment occurred when Plaintiff knew or had reason to know of the injury that is the alleged basis for the action.  883 F. 2d at 418.  Plaintiff's own allegations and assertions illustrate that she clearly knew or, at a minimum,  had reason to know of the basis of all of these purported claims for well more than one year prior to filing suit.  Plaintiff's submission of the April 20, 2017 Intake Questionnaire to the EEOC relating to alleged violations of Title VII and the ADA is fact determinative that her §1983 claims are time-barred.

Similarly, to the extent that Plaintiff has attempted to assert a claim for retaliation under §1983 (which is not clear pursuant to her First Amended Complaint), Plaintiff's claims (while legally baseless), are also time-barred.  In her First Amended Complaint, Plaintiff alleges that the retaliation began "after making the Complaint in 2016."  Specifically, Plaintiff alleges that she "experienced hostility at work, including constant taunting and harassment by other employees."

(R. Doc. 63, ¶159).  *See also,* ¶¶161-162, 167, and 169 of Amended Complaint.  Notwithstanding

that Plaintiff's allegations do not (and cannot) satisfy the elements for a claim for retaliation under

Title VII and §1983 (equal protection), the various dates specifically alleged by the Plaintiff in her

Complaints illustrate that Plaintiff's purported retaliation claim is time-barred.

Also, while it appears that Plaintiff recognizes that she cannot assert a §1983 claim related

to alleged disability discrimination, in an abundance of caution, such allegations are also time-

barred.  (R. Doc. 63, ¶¶123, 125, 128, 132-139, 150-156, 159, 161-162 ).

In addition, to the extent that Plaintiff attempts to base her §1983 claims on the termination

of her employment by the City of New Orleans, her claims are still time-barred.  Although Plaintiff

attempts to allege several different dates for her termination, Plaintiff appears to allege that NOPD

terminated her employment on May 22, 2018 or May 23, 2018.  R. Doc. 63, ¶¶122 and 171.[7]

Plaintiff's underlying factual allegations all occurred in 2016 and 2017, well more than one year

before Plaintiff filed suit.  Plaintiff cannot pick and choose what events she would like to trigger

the statute of limitations for her §1983 claims.  Fifth Circuit jurisprudence is clear that the clock

starts to run *"the moment the plaintiff becomes aware that he has suffered an injury  or has*

sufficient information to know that he has been injured."  *Victorian,* 675 F. 3d at 915.  (Emphasis

supplied).  As the Fifth Circuit held in *Piotrowski v. City of Houston,* 237 F. 3d 567 (5th Cir. 2001),

"a plaintiff need not know that she has a legal cause of action; she need know only the facts that

would ultimately support a claim."  Plaintiff's §1983 claims are time-barred.

Finally, any attempt by the Plaintiff to assert that her claims are not time barred because

they relate back under Rule 15, is a non-starter.  At the time she first filed suit in May 2019, all of

---

[7]     Moreover, in Paragraph 182 of her First Amended Complaint, Plaintiff also alleges that "on January 23, 2018, Plaintiff discovered that her employer had reported to her pension plan that she had been terminated from her job.  No payments had been made to her pension since early 2015."

Plaintiff's §1983 claims were already time barred, such that any relation back under Rule 15 does not salvage her claims. Any argument by the Plaintiff that her claims should relate back is a red herring that should be disregarded by this Court. Fifth Circuit jurisprudence is to the effect that Plaintiff's purported claims under §1983 are untimely and subject to immediate dismissal.

### c. The Individual Defendants are Protected by Qualified Immunity.

In addition to the fact that Plaintiff's §1983 claims are time-barred, she has not adequately pled specific facts to avoid dismissal of her §1983 claims against the Individual Defendants on the grounds that these defendants are protected under qualified immunity.

Specifically, Plaintiff does not make clear in her Amended complaint whether she is suing the Individual Defendants in their official or individual capacity. Based on the fact that her allegations all relate to their official capacities, (*see ¶¶*9-17 of Amended Complaint), it appears that is how she has filed her §1983 claims. If so, those claims are equivalent to a suit against Plaintiff's employer, s*ee Rhodes v. City of Homer*, No. 09-1115, 2010 U.S. Dist. LEXIS 95836, at *14 (W.D. La. Sept. 14, 2010), and should therefore be dismissed as redundant as the Individual Defendants assert in their previously-filed motions to dismiss. To the extent Plaintiff asserts she has sued the Individual Defendants in their personal capacities (which is denied), the Individual Defendants expressly assert qualified immunity as a defense to bar suit against them under §1983.

When a public official is sued in his *individual* capacity for actions taken in the course of his official duties, the public official may assert qualified immunity. *Rhodes v. City of Homer*, 2010 U.S. Dist. LEXIS 95836, at *14. The Fifth Circuit has expressly articulated the standard for a qualified immunity defense, *see Wicks v. Miss. State Employment Servs.*, 4 F.3d 991, 995 (5th Cir. 1995), as follows:

> To overcome the immunity defense, the complaint must allege facts that, if proven, would demonstrate that [the defendant] violated clearly established statutory or constitutional rights. [This heightened pleading requirement] *demands more than*

> *bald allegations and conclusionary statements*.  [The complainant] must allege facts specifically focusing on the conduct of [the defendant] which caused [the plaintiff] injury.

*Id*. (emphasis added).  *See Rhodes*, 2010 U.S. Dist. LEXIS 95836, at *15-16 (holding that the complaint "cannot be cast in broad, indefinite and conclusory terms" and "plaintiff must plead specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to [negate] the defense of qualified immunity").  A plaintiff bringing a Section 1983 individual capacity claim against her supervisor must allege "specific conduct and actions giving rise to constitutional violations."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2003) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 2003).  This legal standard requires substantially more than conclusory assertions: "the plaintiff must allege specific facts giving rise to constitutional violations."  *Id.* (citing *Baker v. Putnal,* 75 F. 3d 190, 194 (5th Cir. 1996).  Mere labels and conclusions or formulaic recitation of the elements of a cause of action will not suffice.  *Twombly,* 550 U.S. at 555.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law,"  *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and courts will not deny immunity unless "existing precedent . . . placed the statutory or constructional question beyond debate."  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

In her Amended Complaint, Plaintiff only makes conclusory assertions and completely fails to allege "specific facts giving rise to constitutional violations."  Plaintiff simply alleges that "Official policymakers had actual or constructive knowledge of a persistent, widespread practice of governmental officials or employees, which, although not authorized by official adopted and promulgated policy, is so common and well-settled as to constitute a custom."  R. Doc. 63, at ¶ 189.  First, as stated, Plaintiff does not specifically allege that the Individual Defendants are being sued in their individual capacities, such that Plaintiff has not alleged "specific conduct and actions giving rise to constitutional violations."  Moreover, aside from Plaintiff's conclusory statements

that the Individual Defendants were allegedly "deliberately indifferent to federally protected rights," Plaintiff fails to allege any specific facts concerning *each* Individual Defendants' conduct that allegedly caused Plaintiff injury. Plaintiff also does not allege any facts that would pertain to a "widespread or persistent" practice. Plaintiff's bald and conclusory allegations that do not specifically identify for each individual defendant his or her specific conduct giving rise to alleged constitutional violations, are not sufficient to rise to the level of widespread incompetence or knowing violation as required by Fifth Circuit jurisprudence. Thus, the Individual Defendants are protected by qualified immunity, such that Plaintiff's §1983 claims must be dismissed.

In cases involving public officials, "the Fifth Circuit has recognized that liberal notions of notice pleading must ultimately give way to immunity doctrines that protect us from having the work of our public officials chilled or disrupted by participation in the trial or the pretrial development of civil lawsuits." *Causey v. Parish of Tangipahoa,* 167 F. Supp. 2d 898, 903-04 (E.D. La. 2001), *quoting Morrison v. City of Baton Rouge,* 761 F. 3d 242, 244 (5th Cir. 1985) "As such, the Fifth Circuit has consistently held that Plaintiffs who invoke §1983 must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss. *Id.* (citing *Geter v. Fortenberry,* 849 F.2d 1550, 1553 (5th Cir. 1988).

### d.      The City is Not Subject to Municipal Liability Under Section 1983.

In addition to the fact that the Individual Defendants' are protected by qualified immunity (in addition to the claims against them being time-barred), a governmental entity that employs a tortfeasor is not itself liable for the tort feasor's actions under the theories of vicarious liability and *respondent superior.* "Municipal liability for Section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy." *Piotrowski v. City of Houston,* 237 F. 3d 567, 579 (5th Cir. 2001). Under *Monell v. Dep't of Soc. Servs.*, 435 U.S. 658

(1978) and its progeny, to establish a claim for municipal liability under §1983, a plaintiff is required to establish the following three elements to distinguish individual violations allegedly perpetrated by local government employees, from actions of the government itself; specifically, a plaintiff must show: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009).

While official policy is ordinarily contained in "duly promulgated policy statements, or regulations," it may also be evidenced by "**a persistent, widespread practice** of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (emphasis supplied). "Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority." *Webster v. City of Houston*, (5th Cir. 1984) (en banc) (per curiam), *reh'g granted on other grounds*, 739 F.2d 993 (1984) (en banc). Under this standard, a municipality is liable *only* if its adopted policy or widespread custom was the "moving force" behind the violation. *Monell*, 436 U.S. at 694. Actions of officers or employees of a municipality thus do not render a municipality liable under §1983 unless they execute official policy as above defined. Any policy which allegedly caused constitutional violations "must be specifically identified by a Plaintiff, and it must be determined whether [it] is constitutional or unconstitutional. *Piotrowski*, 237 F. 3d at 579-80. Finally, there must be a direct causal link between the municipal policy or custom and the alleged deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Plaintiff has wholly failed to assert any specific facts to comply with the stringent burdens required by relevant federal jurisprudence.

PD.28145644.2

In *Amaya v. City of Antonio*, 980 F. Supp. 2d 771, 783 (W.D. Tex. 2013), the court held that the plaintiff failed to meet the *Monell* standard as the plaintiff failed to plead any other instances of similar constitutional violations by the city.  The court explained, "[i]n other words, to state a claim, Plaintiff cannot merely challenge the manner in which the City applied [the ordinance] in his specific case; he must allege facts *showing* other instances where the City abused its discretion […]."  *Id.* (emphasis added).  *See also Morris v. Dallas County*, 960 F. Supp. 2d 665, 684 (N.D. Tex. 2013) (holding a Section 1983 "custom consists of actions that occur for so long and with such regularity 'that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct'").

In determining whether the governmental actions amounted to an official policy that would give rise to municipal liability, the Court assesses whether the disputed action was:

> a)   a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy making authority; or
>
> b)   a persistent, widespread practice of city officials or employees, which, although not authorized by officially adapted and promulgated policy is so common and well-settled as to constitute a custom that fairly represents municipal policy.

In *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984), the Fifth Circuit held:

> If a city may be liable only where the inquiry is inflicted in the execution of city policy, **the complainant must identify the policy, connect the policy to the city itself and show that the particular inquiry was incurred because of the execution of that policy.**

(Emphasis supplied).

Plaintiff's Amended Complaint completely fails to satisfy this standard.  Now, after having her second bite of the apple, Plaintiff has not, and cannot, make any specific allegations regarding a "widespread practice" by the City.  Rather than alleging *specific* facts in support of her Section

1983 claims of a "widespread practice," Plaintiff merely relies upon boilerplate conclusory language that a "widespread practice" existed. *See* R. Doc. 63, ¶ 189. Use of this type of conclusory language, such as that employed by Plaintiff, is legally insufficient to establish municipal liability under Section 1983. Indeed, in *Thomas v. City of New Orleans*, 883 F. Supp. 2d 669, 690-91 (E.D. La. 2012), the court dismissed plaintiff's Section 1983 claims as the claims were too vague and conclusory. Specifically, the Court held that:

> These allegations are so generic and conclusory, they are not entitled to the presumption of truthfulness. They rely on the false safety of boilerplate. Courts "do not presume true a number of categories of statements," the Fifth Circuit reminds, "including legal conclusions; mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" These allegations simply fail to include sufficient factual matter which, accepted as true, would state a claim for municipal liability that is plausible on its face.

*Id*. at 691.

To the same effect, Plaintiff's allegations fail to even come close to asserting a sufficient factual basis to support a Section 1983 claim based upon a persistent, widespread practice, and should be dismissed with prejudice. Nor can she show that the alleged policy was the "moving force" behind her alleged deprivations. *Piotrowski*, 237 F.3d at 579-80; *see also Thomas*, 883 F. Supp. at 690. Plaintiff has not identified who was the alleged policy maker, and who was the "moving force" behind the City's alleged wrongful conduct. In the context of §1983 claims, it is well-established that the claimant must plead specific facts, not mere conclusory allegations, to survive a motion to dismiss. *See Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 903-04 (E.D. La. 2001). *Mays v. Bd. of Comm'rs Port*, No. 14-1014, 2015 U.S. Dist. LEXIS 33596, at *27-28 (E.D. La. Mar. 18, 2015) (However, a "plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." **"The description of a policy**

**or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.")** (Emphasis supplied).

Plaintiff's Amended Complaint falls woefully short of this standard. It is unclear from the face of Plaintiff's Amended Complaint what the "policy" is that she claims violated her constitutional rights. Plaintiff further concludes that the alleged failure by the City to investigate the sexual harassment complaint, and the Defendants' alleged unwillingness to share information about other alleged Complaints made against Defendant Charles constitutes a "widespread practice" throughout the organization, instead of an isolated incident. An allegation of failure to do a certain thing should not constitute a blanket policy sufficient to incur liability under Section 1983. As the Fifth Circuit held in *Piotrowski,* "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated constitutional actions by municipal employees will almost never trigger liability." 237 F. 3d at 577.

Moreover, Plaintiff's own allegations expressly admit that as of July 24, 2012, the date that the United States and the City of New Orleans entered into a Consent Decree, the City's *official* policy is to protect individuals' federal rights. R. Doc 63 at ¶89. All of the incidents alleged by the Plaintiff occurred *after* the City entered into the consent Decree. Plaintiff has failed to allege any specific facts that illustrate that any constitutional violation was perpetrated against her beyond her own overbroad and general conclusions. Further, she has failed to adequately demonstrate that the City's official policy was the "moving force" behind her alleged deprivations. *Piotrowski,* 237 F.3d at 579-80. In this case, Plaintiff's Section 1983 claim fails because there are simply no specific allegations of any official policy or widespread custom, the purpose of which was to (and actually did) deprive her of her constitutional rights. In fact, by Plaintiff's own allegations, the

City's official policy is to protect constitutional rights.  Plaintiff's bare-bones allegations are legally insufficient to rise to the level required for the City to be liable here.

>    **e.**     **Plaintiff Fails to State a Claim (and Cannot State a Claim) Under 42 U.S.C. §1983.**

Plaintiff's §1983 claims are all premised upon the same factual allegations included in Plaintiff's original Complaint where Plaintiff attempted to assert claims for sexual harassment under Title VII against the City of New Orleans as well as against the Individual Defendants.  As addressed by Defendants in their Motions to Dismiss, the Individual Defendants are not properly named in a Title VII or an ADA action because they are not Plaintiff's "employer" as that term is defined in these statutes.  *See* R. Doc. 27.  However, Plaintiff attempts a work around of that well-settled requirement by attempting to assert Section 1983 claims against the Individual Defendants, without alleging any new substantive facts.  Notwithstanding that such claims are time-barred and that the individual defendants are protected by qualified immunity, this legally baseless attempt should be rejected by the Court.

In *Thompson v. Louisiana*, 2006 U.S. Dist. LEXIS 51569 (E.D. La. 2006), the Court, in dismissing the plaintiff's Section 1983 claims, found that the "allegation of discriminatory treatment in connection with public employment that form the basis of a Title VII claim cannot form the basis of a second, separate claim." *Id*. at *6-7 (citing *Jackson*, 73 F.3d at 63).  Plaintiff's *factual* allegations underlying her Title VII claims for alleged sexual harassment/discrimination and retaliation against the Defendants are exactly the same as those she asserts in her Section 1983 claims against the Individual Defendants, and therefore, are not legally sufficient to state a §1983 claim.   Plaintiff's claims should therefore be dismissed.

To the extent that Plaintiff is attempting to assert a claim for retaliation against the Individual Defendants under Section 1983  (which is unclear), those claims also must be dismissed.

To establish a Section 1983 claim for retaliation, Plaintiff must establish that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, (3) there was a causal connection between the two, and (4) the execution of a policy, custom, or practice of the city caused the adverse action.  *See Sharp v. City of Hous.*, 164 F.3d 923, 932 (5th Cir. 1999).

Here, Plaintiff cannot establish a causal connection between her allegations of sexual harassment and alleged termination and, thus, cannot state a claim for retaliation because, as thoroughly explained by Defendants in their Motion to Dismiss, Plaintiff's underlying factual allegations lack temporal proximity.  (R. Doc. 27).  Plaintiff's claims that she was subjected to comments made by female NOPD officers in July 2017 (which she alleged concerned her being messy, gossiping, and taping Defendant Charles), and vague comments made by unnamed male NOPD officers (that do not amount to sexual harassment) are outside the relevant limitations period, and more importantly, do not state a claim for retaliation.  R. Doc. 63 at ¶¶ 123-126.  "Mere threatening language or gestures of a state official, do not, even if true, amount to constitutional violations."  *Norwood v. City of Hammond,* 2003 WL 1090253, at *3 (E.D. La. Mar. 11, 2003). Fifth Circuit precedent establishes that a long time gap between an employee's alleged protected activity and an adverse action against her is too tenuous to establish the causation requirement.[8] Plaintiff cannot establish the requisite legal standard for a retaliation claim under Section 1983.[9]

---

[8]    *See Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086 (5th Cir. 1995) ("there is nothing inherently 'suspicious' about a 13-day suspension that occurs at least several years after protected activity begins.  Indeed, one might argue that the 'timing' here is evidence against retaliation"); *Ajao v. Bed Bath & Beyond, Inc.,* 265 Fed. App'x. 258, 265 (5th Cir. 2008) (finding temporal proximity of four months "not close enough"); *Strong v. Univ. Healthcare Sys., LLC,* 482 F.3d 802, 808 (5th Cir. 2007) (three-and-a-half-month gap, did not, by itself, create a causal link); *Myers v. Crestone Int'l, LLC,* 121 Fed. Appx. 25, 28 (5th Cir. 2005) (three-month gap, same); *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471-72 (5th Cir. 2002) (five-month lapse, same); *Riggs v. D X P Enters.,* 2019 U.S. Dist. LEXIS 189716, at *12-13 (W.D. La. Oct. 31, 2019) (four and a half month gap between EEOC Charge and separation from employment insufficient to establish a causal link).

[9]    Moreover, as stated, all of Plaintiff's §1983 claims are time-barred.

Additionally, although unclear, to the extent that Plaintiff may be attempting  to assert a 1983 claim against Defendants for violation of the ADA, those claims should also not be permitted. An ADA claim may not be brought pursuant to §1983.  *Sullivan v. City of Round Rock*, 2017 U.S. Dist. LEXIS 1, at *7 (W.D. Tex. 9/11/2017).   Courts in the Fifth Circuit have held that the ADA has its own enforcement scheme and that claims for violation of the ADA must be brought through that specified avenue.  *Sullivan*, 2017 U.S. Dist. LEXIS 145312 (in which the court also addressed municipal liability under *Monell*); *see also Albright v. Sheriffs Dep't Rapides Parish*, 2014 U.S. Dist. LEXIS 132946 (W.D. La. 9/20/14) (holding that the plaintiff could not take "two bites at the apple by bringing duplicative claims under both the ADA and section 1983").  Thus, to the extent Plaintiff asserts violations of the ADA in conjunction with Section 1983, those claims should be dismissed.

### f.    Plaintiff's Claims For Punitive or Exemplary Damages Must Be Dismissed.

In her prayer for relief, Plaintiff requests an award of exemplary damages.  (R. Doc. 42-2, p. 32).  However, the City is a governmental entity.  Plaintiff's request for exemplary or punitive damages must be denied because she is not entitled to such relief here.  Municipalities are immune from punitive damages under 42 U.S.C. §1983.  *See. e.g., Aucoin v. Kennedy*, 355 F. Supp. 2d 830, 843 (E.D. La. 2004) Hilliard, 2014 WL 68727, at * 5 (dismissing Title VII punitive damage claim against Jefferson Parish because it is a political subdivision) (citing *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 465-66 (5th Cir. 2001)); *Petty v. Orleans Parish Sch. Bd.*, No. 13-6021, 2014 WL 545860, at *8 (E.D. La. Feb. 11, 2014) (concluding that punitive damages for section 1981 or the ADA cannot be recovered against school district as a political subdivision); *Liner v. Hosp. Serv. Dist. No. 1 of Jefferson Parish*, 230 Fed. App'x 361, 365 (5th Cir. 2007) (affirming post-trial dismissal of punitive damage claim against political subdivision); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (concluding a municipality is immune from punitive

PD.28145644.2

damages under section 1983); *Harris v. City of Balch Springs*, No. 11-2307, 2014 WL 1281244, at *16 (N.D. Tex. Mar. 28, 2014) (same).

Moreover, punitive damages in civil rights actions may only be imposed against defendants in their individual capacity if the conduct that allegedly violates the plaintiff's constitutional rights is "malicious, wanton, or oppressive." *Thomas v. New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982). Notwithstanding that Plaintiff's claims under §1983 are time-barred and legally baseless, and therefore, Plaintiff cannot prevail, Plaintiff has not alleged any specific facts against the Individual Defendants to establish malicious, wanton or oppressive conduct to warrant the consideration of punitive damages. Specifically, Plaintiff's allegations against the Individual Defendants are outlined in paragraphs 58-62 of her Amended Complaint. These allegations are legally insufficient to state a §1983 claim against the Individual Defendants, and are merely duplicative of the Plaintiff's Title VII claims against the City. To obtain punitive damages under §1983, the defendant's conduct must be "shown to be motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Thus, in the absence of a showing of willful, wanton, or malicious behavior, the Individual Defendants also cannot be liable for punitive damages. Plaintiff cannot, and has not, established that the Individual Defendants' alleged behavior was malicious, wanton, or oppressive or that they were motivated by evil motive or intent. Consequently, Plaintiff's allegations against the Individual Defendants does not rise to the level necessary under the law for exemplary damages to be available. Plaintiff's request should be denied.

## V.    CONCLUSION

Plaintiff's First Amended Complaint and Original Complaint should be dismissed in their entirety. All of Plaintiff's asserted Section 1983 claims are untimely, and the Individual Defendants are protected by qualified immunity. Nor can Plaintiff establish municipal liability on

behalf of the City.  Moreover, Plaintiff has not and cannot state a claim against the City under Title VII and the ADA.  Plaintiff woefully fails to meet the pleading standards necessary to survive dismissal, such that all of Plaintiff's claims against the City and the Individual Defendants should be dismissed.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:    */s/ Kim M. Boyle*
KIM M. BOYLE (#18133)
BRANDON DAVIS (#29823)
REBECCA SHA (#35317)
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
kim.boyle@phelps.com
brandon.davis@phelps.com
rebecca.sha@phelps.com

**ATTORNEYS FOR DEFENDANTS, THE CITY OF NEW ORLEANS, PAUL NOEL, ARLINDA WESTBROOK, JENERIO SANDERS, WALTER POWERS, RANNIE MUSHATT, AND MICHAEL HARRISON**