UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SHANNON REEVES                                    CIVIL ACTION NO. 19-10766

VERSUS                                            SECTION "T"
                                                  JUDGE GUIDRY

                                                  MAGISTRATE DIVISION 5
                                                  MAGISTRATE JUDGE NORTH

CITY OF NEW ORLEANS;
RHETT CHARLES; JENERIO SANDERS;
PAUL NOEL;
RANNIE MUSHATT;
WALTER POWERS;
ARLINDA WESTBROOK;
RAYMOND BURKART, SR.;
AND
MICHAEL HARRISON

### PLAINTIFF, SHANNON REEVES', INITIAL DISCOVERY DISCLOSURES

　　　Plaintiff, Shannon Reeves, files her initial discovery disclosures, pursuant to Rule 26 of

the Federal Rules of Civil Procedure, and Rule Local Rule 26.1; plaintiff submits as follows:

I.

### Names, Addresses, Telephone Number of Individuals with Discoverable Information

　　1.　Shannon Reeves
　　　　c/o
　　　　Wendy Manard (#29622)
　　　　Ellyn J. Clevenger (#32395)
　　　　Energy Centre: 1100 Poydras Street
　　　　Suite 2610
　　　　New Orleans, Louisiana 70163
　　　　Telephone: (504) 585-7777
　　　　Facsimile: (504) 556-2977


　　　　[Plaintiff has information surrounding the underlying facts and damages which form

the basis of the claims asserted herein.]

2.  Rhett Charles

3.  Jenerio Sanders

4.  Rannie Mushatt

5.  Walter Powers

6.  Arlinda Westbrook

7.  Raymond Burkart, Sr.

8.  Michael Harrison

[Persons/witnesses/defendants listed above can be contacted through their counsel.]

[Persons listed as witnesss 2-8 are defendants in the above cause and have information regarding the underlying facts, as set out in the pleadings; each can address actions taken and/or not taken with regard to their interaction with Plaintiff; each can address policies and procedures of the department; their training as law enforcement officers; and the civil right laws protecting persons from discrimination, sex, disabilities and retaliation in these contexts.]

9.  Stephanie Landry

[Landry can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Witness can testify regarding her interactions with Plaintiff, including Rule IX hearings related to Plaintiff's employment, the nature and purpose of those proceedings, accommodations requested by Plaintiff and action(s) taken in response to such request(s); what action witness took in response to Plaintiff's request to accommodation for her migraine headaches, and/or what action witness took in

response to Plaintiff's presentation of documentation from her neurologist regarding

requested accommodation Plaintiff's migraine headaches; witness has information as

to the underlying facts set out in the pleadings; witness can address policies and

procedures of the department; her training as a law enforcement officer; and the civil

right laws protecting persons from discrimination based on sex and/or disability, and

retaliation in these contexts.]

10.  Darryl J. Albert

[Albert can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon

E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New

Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness can provide testimony with regard to Plaintiff's complaint of sexual

harassment directed against Albert when he was Plaintiff's supervisor; witness has

information with regard to decommissioning Plaintiff instead of addressing the

requirement, under the law, to provide accommodation; this witness also has

information concerning the release of Plaintiff's medical history/ disclosure of

Plaintiff's HIPAA-protected medical information; can testify with regard to the

policy, custom and practice of the Department at the time, including the Department's

refusal to accept charges/investigate the complaint against him.]

11.  Arlinda Westbrook [repeat]

[Defendant Westbrook can be contacted through the City's counsel, to-wit: Kim M.

Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street,

Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Additional reference to defendant/witness: Defendant can provide testimony with regard to the Department's sexual harassment policies – including the policies and procedures in place prior to and after the Consent Decree entered between the United States and the City of New Orleans.  Witness can provide testimony as to disciplinary policies and procedures, both generally and specifically with respect to how said policies and procedures interact with policies governing sexual harassment and retaliation.  Witness can provide testimony as to disciplinary policies and procedures in place prior to and after the Consent Decree entered between the United States and the City of New Orleans.  Witness can also provide testimony surrounding the contents of the July 30, 2014 letter from the Office of Independent Police Monitor, directed to her (Westbrook) in her capacity as Deputy Superintendent for the New Orleans Police Department; witness can provide historical context and meaning to the letter, in particular the following: "From 2011 to 2013, the OIPM received 26 contacts from NOPD officers or employees involving an element of retaliation or fear of retaliation.  The most common forms of internal retaliation alleged by NOPD employees were retaliatory complaints filed against them, intimidation of complainants or potential witnesses and reassignment or threat of reassignment."  The witness can provide information about the underlying documents, and/or what action the Department took to address the complaints, once this information was brought to the Department's attention.  This witness can provide information about the policies which were initially drafted to address these concerns, and her retaliation and interaction with Plaintiff.  Witness can provide information as to the seven-hundred and nineteen (719) "neglect of duty" allegations made in 2016.  Witness can provide

information as to the requirement that the Public Integrity Board include in an annual report "a summary of each misconduct complaint, including a description of the allegation, the final approved disposition, and any discipline imposed;" and specifically can identify identification of the requisite information as to Plaintiff's complaints, in the PIB's 2016 and/or 2017 annual reports. Witness can provide information with respect to compliance with the Consent Decree between the Department of Justice and the City, including the requirement that officers with complaints of certain policy violations not be promoted or maintained in certain supervisory positions; and what actions her office took to ensure that this requirement was complied with, including manner and methods of record-keeping with respect to complaints, investigation and discipline. Witness can provide information with respect to what actions her office took in response to the Consent Decree's requirements as to changes in policy.]

12. Christopher Johnson

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Witness was lead investigator in the internal probe and generated a report after his investigation. The report's contents are important, particularly as to what each woman reported; when each first complained; and what actions were taken by the Department in response. Witness will also be asked about whether the demotion is a demotion in name only (salary, off-duty work, etc.). Witness will also be questioned with regard to the differences in the sexual harassment policies over time, how

records are kept, and whether he took this into consideration when characterizing the number of sexual harassment complaints previously filed against Defendant Charles. Witness can provide information surrounding his interview of "three male officers who told the internal investigator they had either witnessed Charles make potentially offensive or sexually suggestive comments to their female colleagues or had heard from female colleagues he had done so, according to the PIB report."  [quote derived from Nola.com story referenced below]; whether any action was taken against the male employees for the failure to report; and whether then-existing policy compelled the male employees to report known violations of workplace policies and violations of rights of another.  Witness can provide information as to his interactions and communications with the Plaintiff in the context of investigation of her complaint; including the timeline and any action taken in the context of protecting the Plaintiff.]

13. Susan Hutson, Independence Police Monitor, Office of Independent Police Monitor, 525 St. Charles Avenue, New Orleans, Louisiana, 70130-3049, 504.681.3223. [Witness can testify with respect to how sexual harassment complaints were catalogued under the old policies, and the problems this created in tracking complaints.  Witness can also testify as to confusion about reporting, discrimination and retaliation in the workplace, and protecting employees.  Witness can provide information as to her office's role, and the historical background and supporting data for her letter dated July 30, 2014.  Witness can testify about discrimination, whether sex-based or otherwise, and why protection against retaliation is important.  Witness can provide information about complaints to her office, including by the Plaintiff.]

14. Ursula Price [Independence Police Monitor]

[Witness' current address and contact information:  NEW ORLEANS
WORKERS' CENTER FOR RACIAL JUSTICE. 217 N. Prieur St. New Orleans, LA
70112. Telephone: (504) 309-5165. Fax: (504) 309-5205.]

 [Witness can testify with respect to how complaints of sexual harassment were
catalogued under the old policies; and the problems this created in tracking
complaints.  Witness can testify as to confusion about reporting
discrimination/retaliation in the workplace, and confusion related to protecting
employees.  Witness can also provide predicate information with regard to the role of
her office; historical background and supporting data to support her letter dated July
30, 2014 with respect to retaliation (sex-based or otherwise); and why protection
against retaliation is important.  Witness can provide information about Plaintiff's
communications with the Independent Police Monitor's Office in the context of
complaining of illegal activity.  Witness can testify about Plaintiff's reporting of
complaints against Charles, and her audio recording of Charles.]

15. Michael Harrison, NOPD Superintendent

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon
E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New
Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness has knowledge as to approving/finalizing recommendation of Plaintiff's
termination and factors considered; witness can provide predicate information
regarding policies and procedures of the Department; his background and role in the
Department generally, and specifically in the context of policies and procedures.
Witness can testify as to his ability to intervene in response to known violation(s) of

the law.  Witness can provide information with respect to the four officers who were

on limited duty for a longer period of time than was the Plaintiff.]

16. Detective Nicole Alcala

17. Officer Kimberly Clemons

[Witnesses 16-17 can be contacted through the City's counsel, to-wit: Kim M. Boyle,

Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite

2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witnesses Alcala and Clemons (witnesses 16 and 17) are two of the many persons,

other than Plaintiff, who have complained with respect to Charles' offensive and

illegal workplace conduct; others subject to discovery.  This information is in the

City's possession.  Witnesses 16 and 17 testified at the Civil Service hearing for Rhett

Charles.  These individuals can testify regarding conditions of employment, and Rhett

Charles actions (touching, comments, sex) with recruits.  Their testimony is

consistent with the Departments long-term previous knowledge of Charles' behavior

and reputation, prior to the Plaintiff's complaint, and is relevant as to "quid pro quo."

Testimony is also relevant to policy, practice and custom in the Department at the

time.]

18. [Witness #3 at Civil Service Hearing; testimony redacted; name unknown at this

time]

[Witness 18 can be contacted through the City's counsel, to-wit: Kim M. Boyle,

Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite

2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[The name of Witness 18 is unknown at this time; Witness 18 testified at the Civil

Service hearing for Rhett Charles, but the testimony of Witness 18 was redacted from the transcript of the proceedings provided to the Plaintiff.  Witness 18 is another one of many persons, other than Plaintiff, who have complained with respect to Charles' offensive and illegal workplace conduct, subject to discovery.  This information is in the City's possession.  This individual can testify about conditions of employment, and Rhett Charles actions (touching, comments, sex) with recruits.  Her testimony is consistent with the Department's long-term knowledge of Charles' behavior and reputation prior to their interaction and is relevant as to "quid pro quo." Testimony is also relevant to policy, practice and custom in the Department at the time.  This witness will be identified in discovery.]

19. Shade Shepard

[Witness 19 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness 19 can provide information about inappropriate conduct by Defendants Jenerio Sanders and/or by Darryl Albert; this witness' testimony is relevant to and consistent with the practice, policy and procedures of the Department about untoward conduct based on sex.]

20. Director of Human Resources or Person of Responsibility with the Department

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness has relevant knowledge of policies and procedures, the interrelationship between the City of New Orleans and the New Orleans Police Department's policies; sexual harassment policies and implementation; the City's Human Resources Department's role in decision making in the Police Department; sick leave, payroll, neglect of duty, and disciplinary policies and implementation thereof.  This witness' name will have to be provided by the City of New Orleans.]

21. Michelle Woodford

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Supervisor in APR prior to Rhett Charles' taking over responsibility; witness can address Plaintiff's work under her supervision, and the department and her work history in the department.]

22. Troy Williams

23. Sergeant Walter Powers

24. Sergeant Christopher Johnson

25. Keith Ambrose

26. Kevin Pozzo

[Witnesses 22-26 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Williams can testify with respect to Charles' behavior and related issues.  Powers can testify with regard to policies and procedures in the Department and his

communication with the Plaintiff as to taking the initial report; Powers can also testify with respect to Plaintiff's affirming sexual harassment by Rhett Charles, and Powers' communication with Rhett Charles.  Johnson can testify with regard to policies and procedures in the Department and his interaction with Plaintiff regarding her complaint.  Witnesses Ambrose and Kevin Pozzo can testify regarding their respective backgrounds; and facts related to Plaintiff's telling them about harassment and their reactions/responses thereto.]

27. Sergeant Kenny Quetant

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Sergeant Quetant can testify to asking Plaintiff to work as his administrative assistant and the response to same by his superiors; witness can also provide testimony that, after Plaintiff made her complaint of sexual harassment against Defendant Charles, this witness gave Plaintiff heads-up that everyone knew about her complaint, including Defendant Charles, and including the fact that Plaintiff had a recording, and that people were laughing and joking about it in the Department.  This witness can also provide information regarding another female officer's having confided in him that she'd had sex with Defendant Charles, and that Charles had given her a sexually transmitted disease (STD).]

28. Michael Riles

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Officer Riles can testify to asking Plaintiff to come back to Homicide in a limited-duty capacity and the reaction of superiors to this request; witness also can testify with regard to Plaintiff's solve rate while in Homicide.]

29. Glenn Markam

30. Scott Seymour

31. Chris Abbott

[Witnesses 29-31 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Comparable employees who were out for the same or for a longer period of time, and/or who were provided accommodation such that they were able to work, including formation of entirely new position(s) within the department to accommodate their limitation(s); remaining officers who are comparable in an ADA context are the subject of discovery, and subsequent supplementation of these disclosures.]

32. Sgt. Rudolph Thomas

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[This witness can provide predicate information/information concerning his history with the Department, information regarding Rhett Charles' well-known reputation for offensive and illegal behavior in the department related to sex; department policy and custom and procedure regarding neglect of duty; how Charles' behavior toward women was protected; how complaints are discouraged through threat of retaliation; how retaliation is meted out on those who complain; how Plaintiff's reporting of illegal activity (including harassment) in the Department has subjected her to/made her the target of retaliation at all levels.  This witness can also provide testimony as to Charles' ongoing role in the Department, including his ongoing participation in prestigious extra-duty assignments.  Witness' testimony is relevant and consistent with practice, custom and policy of the Department.]

33.  Enjolie Harris

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness has information about/knowledge of Plaintiff's medical records and information; witness can testify as to the violation of Plaintiff's confidentiality and the alienation which took place against Plaintiff.]

34. Caroline Dalton

35. Angel Clemons

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witnesses 34, 35 have information about working with Plaintiff, and informing Plaintiff they had a problem with her "getting people in trouble;" these witnesses' testimony is relevant and consistent with retaliation for complaints of illegal conduct/activity in the Department.]

36. Captain Ernest Demma

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Witness has information with regard to Plaintiff's job transfers; rejection of requests, by individuals higher up the chain of command, for transferring Plaintiff, including rejections of requests for transfers to positions which might better have accommodated Plaintiff's limitations. This witness can provide information with regard to predicate information; this witness can provide information with regard to the Department's policies and procedures.]

MEDICAL

37. Rennie W. Culver, M.D., Ph.D.

[Witness contact information: 30121 35th Street, Suite B, Metairie, Louisiana 70001, 504.455.9990; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

38. Nicholaos G. Pejic, M.D., Atlas Psychiatry, 504.899.1682

[Witness' contact information: 1301 Antonine Street, New Orleans, Louisiana 70015; business records affidavit and medical records will be obtained for trial

purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

39. Troy A. Beaucoudray, M.D.

   [Witness' contact information:  4213 Teuton Street, Metairie, Louisiana  70006, 504.454.7246; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

40. Wendy J. Jamison, M.D., APMC [retired]

   [Witness contact information:  4224 Houma Boulevard, Suite 350, Metairie, Louisiana  70006, 504.780.9112; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

41. Eliot Levin, M.S.W., L.C.S.W. [deceased]

    [Witness' previous contact information:  5000 Cleveland Place, Metairie, Louisiana 70003,  504.452.6537; business records affidavit and medical records will be obtained for trial purposes; information relevant as to treatment of plaintiff, condition, prognosis, diagnosis.]

42. Erich Conrad, M.D. [current psychiatrist]

   [Witness' contact information: 3450 Chestnut St # 3, New Orleans, LA 70115, 504.897-8558; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

43. Cecile Tebo, 3528 Vincennes Pl, New Orleans, LA 70125-4352, (504) 908-5799.

[Witness can testify regarding her background and working with Plaintiff as a licensed clinical social worker; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

44. Dr. W. V. McDermott, C. Psych., 1000 Bourdon Street, Suite B-430, New Orleans, Louisiana 70116, 504.710.0787.

[Witness hired by the City and wrote a letter dated 5.22.2014 wherein he opined "On the basis of my evaluation procedures and review of her present job description, it is my opinion that she is fit for duty, without restriction, at this time."]

45. William Arendell, LCSW, LLC, 716 Adams Street, New Orleans, Louisiana 70118, 504.358.0377.

[Witness is capable of providing testimony with regard to his background and his working with Plaintiff and his prognosis, diagnosis of Plaintiff; records will be obtained in provable form.]

46. Robert Kelly, M.D., American Back Institute of Greater New Orleans, Inc., 2404 Edenborn Avenue, Metairie, Louisiana 70002, 504.833.2225.

[Witness can provide testimony of his are of Plaintiff for migraines, neck pain and lower back pain since June 11, 2013; records will be obtained in provable form.]

47. Wendy Manard

48. Ellyn Julia Clevenger

Energy Centre
1100 Poydras Street
Suite 2610
New Orleans, Louisiana 70163
Telephone: (504) 585-7777
Facsimile: (504) 556-2977

[Witnesses will provide testimony – when Plaintiff is the prevailing party - with regard to work on the case, contemporaneous time records, and reasonable and necessary attorneys' fees, consistent with the concept of private Attorneys General, as that term is understood in context of the history of the Civil Rights Act.  This testimony is consistent also with established case law.  *See Johnson v. Railway Express, Inc*, 421 U.S. 454 (1975).]

II.

**A Description of Documents and Things in Plaintiff's Possession**

- Tab 1:   New Orleans Police Department, Policy Manual, Policy #328, Workplace, Discrimination/Retaliation Policy, pp. 192-194 [Policy Manual 2013/09/15] .

- Tab 2:   New Orleans Police Department Policy Manual, Chapter 10 – Personnel, Policy Manual 2013/09/15, pp. 754-894; including Policy 1026 – Personnel Files; Policy 1054, Limited-Duty Assignments; Policy 1055, Administrative Reassignment; Policy 1057, Job Performance, Improvement Plan [Policy Manual 2013/09/15] [nola.com].

- Tab 3:   New Orleans Police Department Procedures Manual, pp. 898-977; including PR328, Workplace/Discriminatory Harassment/Retaliation, pp. 949-95; Policy 1014, Sick Leave and On-Duty injuries, pp. 1079-1083; PR105, Extended Sick Leave Procedures and Family Medical Leave, pp. 1084-1090; PR1021, pp. 1091-1109 [Policy Manual 2013/09/15] [nola.com].

- Tab 4:   Operations Manual, Chapter 26.3.  Title:  Workplace Discrimination, Sexual Harassment, and Retaliation; effective: 05/07/2017; revised:  replaces Policy/Procedure 328.

- Tab 5:    Consent Decree, *United States of America v. City of New Orleans*.[1]

- Tab 6:    Investigation of the New Orleans Police Department, United States Department of Justice, March 16, 2011.

- Tab 7:    Office of Independent Police Monitor – City of New Orleans – letter from Susan Hutson, Independent Police Monitor letter dated July 30, 2014 to Deputy Superintendent Arlinda Westbrook, Director, Public Integrity Bureau, New Orleans, Louisiana 70119.

- Tab 8:    U.S. Equal Employment Opportunity Commission's file – 461-2017-0199; 461-2018-02385.

- Tab 9:    News article – WDSU Investigates:  Shake-up at NOPD crime lab amid sexual harassment allegations.[2]

- Tab 10:   News article – Nola.com.  NOPD sergeant demoted for sexual harassment after 3 women report inappropriate comments, New Orleans Metro Crime and Courts News.[3]

- Tab 11:   DVD – Rule IX hearing;

- Tab 12:   Letters from City [March 12, 2013 letter from Ronal W. Serpas, Superintendent of Police; June 6, 2013 letter from Stephanie M. Landry, Deputy Superintendent, Management Services Bureau; letter dated September 19, 2013 from Ronal W. Serpas; letter dated September 26, 2017 from Michael S. Harrison, Superintendent of Police; letter dated May 23, 2019 from Michael

---

[1] http://www.nola.gov/getattachment/NOPD/NOPD-Consent-Decree/Consent-Decree.pdf/.  (last visited 3/22/20).

[2] https://www.wdsu.com/article/wdsu-investigates-shakeup-at-nopd-crime-lab-amid-sexual-harassment-allegations/26979164#.  (last visited 3/22/20).

[3] https://www.nola.com/news/crime_police/article_73b80501-bab2-50f4-a5ee-f744782075f3.html (last visited 3/22/20).

S. Harrison, Superintendent.

- Tab 13:   Digital recording, Rhett Charles [workplace].

- Tab 14:   Screenshot, posted by Defendant Rhett Charles [workplace, dated October 12, 2017], picture of woman, "Would you have a quickie outside in broad daylight?  Message from Defendant Charles, "Put on a dress and walk pass me and find out."

- Tab 15:   Screenshot [workplace], posted by Defendant Charles, appears to be dildo; message from Charles:  "Look like a lady has options on a cold lonely night." [forwarded to Defendant Westbrook on December 2, 2018]

- Tab 16:   Screenshot [workplace], posted by Defendant Charles, "Just because that dick is big don't mean that stroke is lethal"… "Lol, love the skin you in.  I love mine…… :)"

- Tab 17   News Article: 8 months later, NOPD officer awaits discipline for sergeant who sexually harassed her.[4]

   [A & B]:   May 24, 2018 posting by Charles after Plaintiff terminated and posting on timeline [two parts].

- Tabs 18-28:

   Katrina-related pictures.

- Tab 29:   Medical records of Rennie W. Culver, M.D.

- Tab 30:   Medical records of Nichoas G. Pejic, M.D., Atlas Psychiatry

- Tab 31:   Letter from EEOC representative Sirwanda D. Hall, Office Automation Assistant to Plaintiff

---

[4] //www.nola.com/news/crime_police/article_3429fa57-f89a-5cf6-ba62-5e93242a4df9.html (last accessed 3/22/20).

- Tab 32:    Medical records Eliot Levin, M.S.W., L.C.S.W., Lakeside Family Therapy

- Tab 33:    Attendance Records Plaintiff

- Tab 34:    Transcript Civil Service Commission Hearing; Docket Number 8735; Rhett Charles versus Department of the Police, Civil Service Commission, City of New Orleans, transcript ║ 173 pages.

- Tab 35:    Deposition of Rhett Charles, taken in the matter of Rhett Charles v. Department of Police; Docket No. 8736, January 11, 2018: 140 pages.

- Tab 36:    Deposition of Shannon Reeves, taken in the matter of Shannon T. Reeves v. City of New Orleans; Docket No. 15-07563; July 11, 2016: 221 pages.

- Tabs 37-41:
  Income Tax Records of Shannon Reeves for years 2013-2018

- Tab 42:    2014 Employee Verification document [2014]

- Tab 43:    News article, 4WWL, CBS affiliate, "NOPD officer struck by 6 bullets in 3 shootings finds new calling" [related to Abbott's accommodation][5]

- Tab 44:   Miscellaneous I - documents, in date order.

- Tab 45:   Miscellaneous II – documents, in date order.

- Tab 46:   Miscellaneous II – documents in date order.

- Tab 47:   Bureau of Labor and Statistics document.[6]

- Tab 48:   Resume of Wendy Manard.

- Tab 49:   Resume of Ellyn Clevenger.

---

[5] https://www.wwltv.com/article/news/investigations/mike-perlstein/nopd-officer-struck-by-6-bullets-in-3-shootings-finds-new-calling/289-a1cc0f13- e754-41ee-8336-7d8016d29c12

[6] file:///G:/Labor%20force%20characteristics%20by%20race%20and%20ethnicity,%202018%20_%20BLS%20Reports_%20U.S.%20Bureau%20of%20Labor%20Statistics.html

- Tab 50:   Time records [to be supplemented]

- Tab 51    Physician's Examination Certification

- Tab 52   N.O.P.D. Report of Injuries document

- Tab 53   Letter to Chief Arlinda Westbrook [undated]

- Tab 54   August 8, 2018 complaint by Shannon Reeves with attachment; pictures are referenced earlier, see Tabs 13-16 above

- Tab 55   Letter to EEOC from Shannon Reeves dated April 27, 2014

- Tab 56    Dr. W.V. McDermott, C. Psych. letter dated May 22, 2014

- Tab 57    Bureau Chief Arlinda P. Westbrook's letter dated 032.28.2014, suspension of police powers

- Tab 58    Shannon Reeves letter dated 04.27.2014, complaint surrounding revealing medical records

- Tab 59    Form D1-1:  Initiation of A Formal Disciplinary Investigation dated 06.20.2014

- Tab 60    Letter dated June 18, 2013 from Robert Kelly

- Tab 61    Letter dated 07.25.2016 from Major Raymond C. Burkart to Shannon Reeves

- Tab 62    Letter dated 09.26.2017 from Superintendent Michael Harrison to Shannon Reeves

- Tab 63    Letter dated 09.19.2013 from Superintendent Ronal W. Serpas to Shannon Reeves

- Tab 64    Letter dated 10.23.2017 from Shannon T. Reeves to Superintendent of Police

- Tab 65    Civil Service finding dated 10.05.2016; Docket No. 8735, Rhett Charles

- Tab 66    News article dated 03.29.2019:  WDSU Investigates:  Shake-up at NOPD

crime lab amid sexual harassment allegations

- Tab 67    Employment Authorization Form dated 04.16.2012

- Tab 68    News article, Thursday, September 15, 2015

- Tab 69    News article dated March 17, 2015, "NOPD chief shakes up leadership at

    beleaguered sex crimes unit.

- Tab 70    News article dated April 19, 2018, "New Orleans settles suit filed by families

of Kim Groves, woman murdered on cop's order in 1994."

III.

**Computation of Damages**

Plaintiff's computation of damages is as follows:

- Back pay[7] – running from date of termination June 5, 2018 until the trial,

    September 1, 2020.

    June 5, 2018 – June 5, 2019                                = $70,000.00

---

[7] Backpay assessment is based upon supporting documents, Tabs 37-41 (income tax records of Shannon Reeves for the years 2013-2018.  The following underlying factors govern the calculation, to-wit:

1.  Calculations are made from the date of termination through the date of trial.
2.  Annual pay amount is calculated by using the salary basis of $57,000.00, in addition to a conservative adjustment which assumes reasonable accommodation and no retaliation, as well as overtime pay and special assignment/extra assignment pay.
3.  This calculation does not include prejudgment interest, which would be included in the calculation if and when an award is assessed by a jury.  Although the decision to award prejudgment interest on back pay is discretionary, *Gloria v. Valley Grain Productions, Inc.*, 72 F. 3d 497, 500 (5th Cir. 1996), the Fifth Circuit has noted that "under Title VII interest is an item that 'should be included in back pay' to make a victim whole."  *See also Pegues v. Mississippi State Employment Serv.*, 899 F. 2d 1449, 1453 (5th Cir. 1990) *(citing Pettway v. Am Cast Iron Pipe Co.*, 494 F .2d 211, 263 (5th Cir. 1974)).
4.  This calculation is not inclusive of a value for retirement, State pay, mileage, furlough pay, and other fringe benefits; this assessment will be made, and these calculations adjusted, based on information which will be obtained during the discovery process.

Additional note:  The backpay award is subject to the following adjustment, to-wit:  reimbursement of the amount of money paid to plaintiff (retirement funds payout) around the time of Plaintiff's unlawful termination.  This amount is estimated to be roughly $45,000.00; the exact amount should be provided by City upon Plaintiff prevailing in this litigation.

There is no reimbursement for workers' compensation (none paid) and/or short or long-term disability (none paid).

June 5, 2019 – June 5, 2020                                    = $75,000.00

June 6, 2020 – September 21, 2020                   = $22,000.00.[8]

Assumption:  Loss of insurance taken into consideration by a factor of

25%, the above tabulations change in the following respects:

June 5, 2018 – June 5, 2019    = $70,000.00 x .25 = $17,500.00 =

$87,500.00

June 5, 2018 – June 5, 2019          = $75,000.00 x .25 = $18,750.00 =

$93,750.00

June 6, 2020 – September 21, 2020     = $22,000.00 x .25 = $  5,500.00

$ 27,500.00

Back pay until the time of trial date                    = $208,750.00

- ▪ <u>If reinstatement is deemed not appropriate, the calculations for front pay are set</u>

<u>out below</u>:[9]

---

[8] Prorated salary was calculating in the following manner:  June 5, 2020 – September 21, 2020 = 108 days. $75,000.00 (annual salary (approximately $57,000.00) plus projection amount for details/extra work/overtime) divided by 365 days = $205.48.  $205.48 x 108 = $22,191.78.00; rounded to $22,000.00.

[9] The calculation for front pay is included, if reinstatement is deemed not appropriate.  Factors to consider in the context include the previous incidents of retaliation, directed against Plaintiffs and others who have complained; but also the fact that the documentation previously provided to Defendant reflects that, with proper accommodations, reinstatement is appropriate.   Reinstatement or front pay is ordinarily appropriate when requested.  *Bogan v. MTD Consumer Group, Inc.*, 919 F.3d 332, 336 (5th Cir. 2019).  Although the preferred equitable relief is reinstatement, front pay is appropriate when reinstatement is not feasible.  *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869 (5th Cir. 1991).

The reinstatement is deemed not appropriate, the calculation runs from September 1, 2020 on each calculation; five years, ten years and fifteen years periods are provided.

Plaintiff is currently forty four (44) years of age; her work-life expectancy is noted before.  The work-life expectancy was derived by taking into consideration available literature from the Bureau of Labor and Statistics and the chart below:

## Working Life/Life Expectancy Calculator

a.   5 years from trial date = $80,000.00 x 5 = $400,000.00 x .25 =

$500,000.00

b.   6-10 years from date of trial = $85,000.00 x 5 = $425,000.00 x .25 =

$106,250.00 + $425,000.00 = $531,250.00 + 500,000.00 =

$1,031,250.00

Total of front pay calculations, if award is five (5) years out        = $ 500,000.00

Total of front pay calculations, if award is ten (10) years out        = $1,031,250.00

[Jury will be asked to use their discretion in awarding front pay.]

- Compensatory damages, including physical injury, pain and suffering, mental

  injury, and mental anguish but for the Defendants wrongful acts:  $500,000.00.[10]

- Punitive damages, associated with the individual defendants' malice and reckless

  indifference of Plaintiff's known rights:  $1,500,000.00.[11]

---

This calculator estimates an individual's remaining years of working life expectancy[1] and life expectancy, based on his or her current age, gender, and education level. [2]

| | |
|---|---|
| **Today's Date:** | March 19, 2020 |
| **Date of Birth:** | April / 14 / 1975 |
| **Gender:** | ○ Male  ⦿ Female |
| **Educational Level:** | High school diploma |

Calculate

| | |
|---|---|
| **Current Age:** | 44.9 |
| **Years To Work[3]:** | 15.1 + 44.9 = 60.0 (Retirement Age) |
| **Years To Live[4]:** | 40.3 + 44.9 = 85.2 (End of life span) |

© 2001-2020 Brown Economic Consulting Inc. All rights reserved.

https://www.brownecon.com/bea_calculators/workLifeExp/default.asp

[10] No mathematical calculations for this number; a reasonable assessment of the underlying evidence. Compensatory damages as calculated herein does not include backpay or interest on backpay, only those factors listed above are included in the calculation.

- Reasonable and necessary attorney's when Plaintiff is the prevailing party: the anticipated reasonable and necessary attorneys' fees are $400,000.00 - $500,000.00; Wendy Manard is billing at $400.00 an hour; Ellyn Clevenger is billing at $400.00 an hour; paralegal time is billed at $150.00 an hour.  The fees are reasonable and necessary in the greater New Orleans area.  The resume of Manard is under Tab 46; the resume of Clevenger is under Tab 47.  Counsel will supplement over the course of the discovery period; currently expended time by attorneys - $75,000.00 - $80,000.00 to date.

As soon additional discovery is obtained and as soon as practicable, Plaintiff will supplement the damages analysis and/or may hire an economist and supplement with an expert report.

DATE:  March 25, 2020.

Respectfully submitted,

/s/ Ellyn J. Clevenger

_____
Wendy Manard (#29622)
Ellyn J. Clevenger (#32395)
Energy Centre: 1100 Poydras Street
Suite 2610
New Orleans, Louisiana 70163
Telephone: (504) 585-7777
Facsimile: (504) 556-2977

ATTORNEYS FOR THE PLAINTIFF
SHANNON REEVES

---

[11] No mathematical calculations for this number; a reasonable assessment of the underlying evidence.

CERTIFICATE OF SERVICE

This is to certify that the Rule 26 disclosures were filed electronically on March 25, 2020. This is also to certify that the attachments to the disclosures will be forwarded to opposing counsel electronically, or by priority mail if counsel does not accept electronic service, on or before March 31, 2020.  The delay is associated with scanning and/or copying of documents.

/s/ Ellyn J. Clevenger

_____

Ellyn J. Clevenger