UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SHANNON REEVES                              CIVIL ACTION NO. 19-10766

VERSUS                                      SECTION T
                                            JUDGE GUIDRY

                                            MAGISTRATE DIVISION 5
                                            MAGISTRATE JUDGE NORTH

CITY OF NEW ORLEANS;
RHETT CHARLES; JENERIO SANDERS;
PAUL NOEL;
RANNIE MUSHATT;
WALTER POWERS;
ARLINDA WESTBROOK;
RAYMOND BURKART, SR.;
AND MICHAEL HARRISON

PLAINTIFF, SHANNON REEVES', MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL THE CITY OF NEW ORLEANS AND INDIVIDUAL
DEFENDANTS TO PROVIDE RESPONSES TO DISCOVERY

Plaintiff, Shannon Reeves, files this, her memorandum in support of her

motion to compel full and complete answers to discovery tendered to the City of

New Orleans and all individual Defendants represented by counsel for the City of

New Orleans.  Plaintiff's first requests for answers to interrogatories, and first

requests for production of documents, propounded on these Defendants, have been

met with a barrage of general "boilerplate" objections; refusal to answer

interrogatories with anything other than general references to documents; refusal to

comply with Rule 34(b) of the Federal Rules of Civil Procedure; and a global

1

objection as to individual Defendants, refusing to answer any interrogatories or produce any documents, on the basis of the fact that they relate to individual Defendants' employment, and also refusing to produce documents so long as the 12(b)(6) motion remains pending (Defendants' first 12(b)(6) motions at Doc. 27, 38 Plaintiff's Response in Opposition at Doc. 44; Defendants' Reply at Doc. 66; Defendants' second 12(b)(6) motion at Doc. 78; Plaintiff's Response at Doc. 83; Defendants' Reply at Doc. 101; Plaintiff's Sur-Reply at Doc. 102.

Defendants have yet to file answers, to either the Plaintiff's Original or First Amended Complaint (Doc. 63).  Plaintiff submits to the Court as follows.

1.  Discovery requests were sent out to the Defendant by email transmission on March 27, 2020; the answers were received by Plaintiff's counsel on April 27, 2020.

2.  A copy of Defendant, City of New Orleans', responses to the Plaintiff's First Set of Interrogatories and Requests for Production of Documents is attached as Exhibit 1.

3.  A copy of the individual Defendants' responses to the Plaintiff's First Requests for Answers to Interrogatories and Production of Documents is attached as Exhibit 2.[1]

---

[1] Responses by all individual Defendants are substantially the same (multiple objections and refusal to answer).  Responses by Defendant Arlinda Westbrook, Deputy Chief of the New

4.   On May 7, 2020, Plaintiff sent a letter to counsel for the Defendant, City of New Orleans, addressing deficiencies in the City's answers to the Plaintiff's First set of Interrogatories.  A copy of that letter is attached as Exhibit 3.

5.   On May 11, 2020, Plaintiff sent a second letter to counsel for the Defendant, City of New Orleans, specifying deficiencies in the City's responses to the Plaintiff's First Request for Production of Documents.  A copy of that letter is attached as Exhibit 4.

6.   Also on May 11, 2020, Plaintiff sent a third letter to counsel, setting out deficiencies in the individual Defendants' responses to interrogatories and requests for production of documents.  A copy of that letter is attached as Exhibit 5.

7.   On Friday, May 15, 2020, counsel for the Plaintiff; counsel for the Defendants; and co-counsel for the Defendants participated in a telephone conference.  On Monday, May 18, 2020, counsel for the Plaintiff sent a letter to Defendants' counsel, summarizing the Defendants' position as to discovery, as related in the telephone conference, and, *inter alia*, requesting that Defendants

---

Orleans Police Department's Public Integrity Bureau, are at Page 1 of Exhibit 2 (Interrogatories) and Page 22 (Requests for Production); responses for remaining individual Defendants are located as follows: Michael Harrison, Page 39 (Interrogatories); Page 57 (Requests for Production); Rannie Mushatt, Page 79 (Interrogatories); Page 94 (Requests for Production); Jenerio Sanders, Page 187 (Interrogatories); Page 199 (Requests for Production); Paul Noel, Page 117 (Interrogatories); Page 130 (Requests for Production); Walter Powers, Page 147 (Interrogatories); Page 162 (Requests for Production).

provide written responses to Interrogatories in accordance with the position stated in the telephone conference, and that they amend their responses to comply with Rule 34(b) of the Federal Rules of Civil Procedure.  A copy of this letter is attached as Exhibit 6.[2]

8.   Defendant provided supplemental responses to Plaintiff's discovery on June 5, 2020.  A copy of those supplemental responses is attached as Exhibit 7.

9.   Deficiencies in discovery responses are as follows.

## DEFENDANT, CITY OF NEW ORLEANS', RESPONSES TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

## 10. REFUSAL TO PRODUCE EMPLOYMENT FILES.

The first request for production seeks the employment file for each of the individual defendants, as well as the Plaintiff's employment file.  Undersigned counsel has reviewed the documents produced to date.  The bulk of the documents produced relate to documents submitted by Plaintiff to her employer in the context of illness/disability (approximate Bates-stamp range 00100 – 1200) and policy and procedure manuals (approximate Bates-stamp range 1250-13,000).  The City of New Orleans has refused to comply with Rule 34(b), and has not provided whether responsive materials have been withheld, nor has it specified the part of the request

---

[2] Undersigned counsel's letter contained the wrong designation of Rule 34's subsection; counsel for Defendants sought clarification by email the following week, and undersigned counsel corrected the error.   A copy of that communication is attached following the letter at Exhibit 6.

objected to.  The City of New Orleans has failed to produce any of the employment files for any of the individual Defendants, or for the Plaintiff.

11. In the context of the Plaintiff's employment file, by way of example, there are no evaluations or documents related to assessment of job performance. The type of employee a Plaintiff was, prior to bringing a federal complaint against a Defendant employer, is an important consideration for any trier of fact in an employment case.

12. With respect to the individual defendants, the problem is much the same. Defendants' employment history, write-ups, complaints, promotions, reprimands, and the like are important in assessing truth and veracity of asserted facts, particularly at the time of taking Defendants' depositions.

13. The City has raised a multitude of objections with regard to the personnel files of individual defendants, including that the discovery is premature (given the pending 12(b)(6) motion); is not relevant; that it seeks "highly confidential" information; is not "relevant or proportional to the needs of the case;" and that it is vague ("employment file;" "disciplinary file;" and "complaints" are "undefined and unspecified and may be interpreted to have many different meanings"); and that it is overbroad in time and scope ("because it is not limited to the time frame relevant to this case (2014-2018) and Plaintiff was employed by the City for over 15 years.").

14.  It is difficult to understand the substantive bases for some of the City's other objections to this request.  For example, the City states, as an objection to production, that the Plaintiff's amended complaint did not specifically state that Plaintiff is suing the individual Defendants in their individual capacities; and to the extent that the Defendants are being sued in their individual capacities, they have qualified immunity.  The City further objects that the request seeks documents concerning complaints against "the individual Defendants who are not Plaintiff and this case is brought on an individual, not collective, basis and asserts claims under the ADA, Title VII, and Section 1983."

15. The Plaintiff in this case agreed with the Defendants' filing a motion for entrance of a protective order, with respect to materials obtained in discovery in this case; this Court subsequently signed a protective order (Doc. 115).  To the extent that the Plaintiff seeks information related to non-parties, the protective order that is in place should resolve concerns related to confidentiality.  The protective order also resolves issues related to Defendants' pending claims of qualified immunity.

16.  Plaintiff seeks complete copies of the employment files for individual Defendants, parties to this suit.  Defendants are implicated in this employment discrimination dispute, brought pursuant to Title VII and 42 U.S.C. Section 1983.

Their employment files are relevant both with regard to Plaintiff's Section 1983 and Title VII claims.

17. Both the United States Court of Appeals for the Fifth Circuit and the Eastern District of Louisiana have consistently recognized that plaintiffs in employment discrimination cases may obtain copies of personnel files.[3]  The employment files of non-party employees may also be obtained, subject to a protective order, limiting use to attorneys, parties, and purposes of the litigation. *Id.*

18.    Even if tailored to restrict the production of designated employment file materials (to, for example, such materials as salary information; training (in law enforcement; civil rights; policies and procedures; sexual harassment); commendations and evaluations (good and bad); complaints involving sexual harassment (whether or not classified as such in the context of any disciplinary proceeding).  This request should be compelled, the Defendants' plethora of boilerplate objections notwithstanding.  With respect to the objection regarding

---

[3] *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978); *Montgomery-Smith v. La. Dep't of Health & Hosps.*, No. 08-4737, 2011 U.S. Dist. LEXIS 55342 (E.D. La. 2011); *Balakrishnan v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 08-4315, 2010 U.S. Dist. LEXIS 157867 (E.D. La. 2010)(also finding that, unless a request is overly broad on its face, the burden is on the objector to show that the request is overly burdensome); *Bernofsky v. Tulane Univ. Med. Sch.*, CIVIL ACTION NO. 95-358 SECTION "C" (2), 1996 U.S. Dist. LEXIS 5986, 2 (E.D. La. 1996), *citing Coughlin v. Lee*, 946 F. 2d 1152, 1159 (5th Cir. 1991), *Trevino v. Celanese Corp.*, 701 F. 2d 397, 405-406 (5th Cir. 1983)

prematurity, the Defendants have neither sought nor been granted a protective order allowing them to refuse to respond to discovery until the motion is ruled upon. This is especially so in light of the running discovery period, and the length of time that the Plaintiff has now been attempting to get these documents (two and a half months).

19. Request for Production No. 2 goes to the core of this case. The request seeks a copy of any and all sexual harassment complaints from January 1, 2010 to January 1, 2020. The request also seeks the investigative file surrounding each complaint and the results of any such complaint. The City of New Orleans has produced no documents in response to this request.

20. The City lodged the same objections as stated previously: relevance; lack of proportionality; confidentiality of information sought; information sought concerning "non-party individuals who are not Plaintiff who are not parties to this case and this case is brought on an individual, not collective, basis." The City also again objected on the basis of vagueness, stating that "sexual harassment;" "complaint(s);" and "investigative file" are "undefined and unspecified."

21. Information obtained independently of the discovery process (including newspaper articles) reflects that the New Orleans Police Department has maintained a departmental policy of not investigating sexual harassment complaints, and also of hiding sexual harassment complaints by classifying them

as something relatively benign, such as "neglect of duty." The information sought by this request is important, in order to determine how the custom, policy and practice of the Department played out with regard to sexual harassment. The information also permits the examination of these policies in their factual contexts. Plaintiff limited the request to a period of ten (10) years, even though she was employed by the City for almost twenty (20) years, and directed the discovery to the New Orleans Police Department, not to the entire City.

22.  Sexual harassment complaints made with the NOPD, and any investigation of complaints, including results, must be produced. There is no other way to prove custom, policy, or practice without a resounding hearsay objection, either at the summary judgment stage or at trial. That this information is discoverable should go without saying. The Plaintiff should not have to engage in this uphill battle to obtain information to which she is clearly entitled.

23.  Request for Production No. 3 requested the Disciplinary Matrix for NOPD for a period of 10 years (2010-2020). In the discussion with Defendant's counsel, Plaintiff's counsel sought to compromise on this issue, and agreed that the Defendant would produce the Disciplinary Matrices from 2013 through 2020.

24.  Defendant City of New Orleans has remained consistent, lodging the same, or very similar, objections - relevance; lack of proportionality; over-breadth; and vagueness (Defendant's objection as to vagueness argues that "the term

"Disciplinary Matrix" is undefined and unspecified and may be interpreted to have many different meanings." The documents ultimately provided by the Defendant, dated 2016-2018, state in their headings, in bold type: "Disciplinary Matrix and Penalty Schedule."). Defendant has produced a Disciplinary Matrix/Penalty Schedule with a stated effective date of May 2016, and with subsequent revisions in May 2017 and March 2018. However, Defendant has not produced the Disciplinary Matrix/Penalty Schedule for 2013-2016, nor has it stated whether any documents have been withheld; whether any policy was in effect between 2013 and 2016; whether the same policy was in effect at the time of Plaintiff's termination; or whether the same policy is still in effect at present.

25. It is well-established law that plaintiffs are entitled to seek relevant information within a reasonable period of time before and after the discrimination complained of. *Marchese v. Secretary*, No. 03-3082, 2004 U.S. Dist. LEXIS 20680 (E.D. La. 2004). Plaintiffs are also entitled to seek information related to the "atmosphere in which the plaintiff operated." *Id.* at *4.

26. The Disciplinary Matrix is important in the context of this case, to-wit: the custom, practice and policy of the NOPD in not following federal law and mis-characterizing sexual harassment complaints (information obtained from the Independent Police Monitor's Office, news article) and how complaints were previously addressed by the City. The Disciplinary Matrix serves as the

mechanism by which the NOPD institutes disciplinary proceedings against its employees; prescribes the punishment which may be meted out; and is therefore the starting point for an analysis of NOPD custom, practice and policy.

27.   Plaintiff's Request for Production No. 4 relates to the City of New Orleans Police Department's Sexual Harassment Policy for the years 2010-2020. The City has produced the following:  City of New Orleans Sexual Harassment Policy dated February 15, 20189 (City 000050-000053); NOPD's Policy dated 09/15/2013, Policy Number 328 (City 000054-000056) and NOPD's Policy dated 05/20/2017, replacing Policy Number 328 (City 000057-000061); City of New Orleans Policy Memorandum No. 54 (Revised), August 28, 1997 (City 000033-000033); Grievance Procedure 000045-000049.  No document has been produced for the period of 2010-2013 for NOPD.  Plaintiff was employed for twenty years and it was her understanding that NOPD did not have a sexual harassment policy during a period of her employment.  Subject to depositions, seemingly this request has been answered (currently depositions have not scheduled by the parties because of the pandemic and the parties have been awaiting the conditions in the state to abate, in a downward trend).  However, again, the Plaintiff seeks the Defendant's statement as to whether any documents have been withheld, in order to ascertain whether the documents produced represent the entirety of materials responsive to this request.

28.   Request for Production No. 5 seeks a copy of each and every report issued by the Department to the Office of Independent Police Monitor.  Defendant cited the same boilerplate objections as previously stated, adding that the request is unduly burdensome "because it would require the City to dig through records of each and every communication between the NOPD to the Office of Independent Police Monitor in an unlimited time frame to find the documents requested, which again, are not relevant or proportional to the Plaintiff's individual claims in this case. Subject to the foregoing objections and without waiving same, Defendant reserves the right to supplement and/or amend its response to this request."

**Response and problem with non-production**

In the hope of resolving this issue, Plaintiff's counsel informed Defendant's counsel she was willing to limit this request to reports in which retaliation and sexual harassment are mentioned.  Even with the additional limitation, Defendant failed to produce any of these reports, even though the reports are required by the Consent Decree between the NOPD and the Department of Justice. Public information (news article and the publicly released Consent Decree) revealed the existence of these documents, and problems in the department with respect to retaliation and sexual harassment.

29.   Request for Production No. 6 [NOPD's policy with regard to disabilities

and accommodation of employees for the years 2010-2020].  The City has produced the following documents, to-wit: (City 000030-000042; 000043; 000045-000049).  It appears that the requested documents have been produced.  However, because the City has produced these documents subject to a number of objections, Plaintiff again asks that the City indicate the part of the request that is objected to, and also identify whether any documents have been withheld on the basis of its objections.

30.  Requests for Production No. 7 and No. 8 are grouped together to reflect the difficulty of obtaining adequate responses.  Request No. 7 seeks any and all complaints of sexual discrimination and sexual harassment received by the City from Plaintiff; and No. 8 seeks any and all request for accommodation submitted by Plaintiff to the City. These simple requests were met with the same plethora of objections; no documents were produced.  Adequate responses should be compelled in that sexual discrimination, sexual harassment and the lack of accommodation form the basis of the underlying claims.  With respect to the City's conclusion that 2014-2018 is the only period of time for which it must produce information, again, this objection is invalid (see discussion of the law regarding entitlement to information for a reasonable period of time before the complained-of

action, *supra*); this is also not the extent of the relevant time period.[4]  Until the

*McDonnell Douglas* burden-shifting analysis is no longer the standard by which

sexual discrimination complaints are assessed, the information requested goes

directly to the Plaintiff's burden of proof, and the Court's/jury's review of whether

the reason given by the employer for the complained-of action is pretextual and/or

is a ruse.  The information sought is generally consistent with Plaintiff's burden,

under both Title VII and Section 1983, and should be provided and readily

available.[5]

    31.Request for Production No. 9 requested "all sexual harassment

complaints from January 1, 2010 to January 1, 2020 which were categorized as

'neglect of duty' complaints by the City."  This too was met with the same

boilerplate objections, and no documents were produced.  These documents are

---

[4] *See F.R.C.P.* 401: Evidence is relevant if: (a) it has any tendency to make any fact more or less probable than it would be the evidence; and (b) the fact is of consequence in the action.

Under a Title VII claim, Where a harassment claim arises out of a supervisor's conduct, "there are four elements of a hostile working environment claim: (1) that he employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3)that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment." *Lauderdale v. Tex. Dep't of Criminal Justice,* 512 F.3d 157, 162–63 (5th Cir. 2007). To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Aryain v. Wal-Mart* Stores of Tex., L.P., 534 F.3d 473, 479 (5th Cir. 2008) (alteration in original) (*quoting Lauderdale*, 512 F.3d at 163). We use an objective "reasonable person" standard to evaluate severity and pervasiveness. *Oncale*, 523 U.S. at 82. Ultimately, whether an environment is hostile or abusive depends on the totality of circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Under Section 1983, Section 1983 provides a cause of action against any "person, who under color of any statute, ordinance, regulations, custom, or usage" violates ,an individual's constitutional rights.  42 U.S.C §1983.  *Monell v. New York City Department of Social Department of Social Services*, 436 U.S. 658 (1978), held that a local governmental entity such as a county is a "person" subject to suit in a section 1983 action.

relevant with regard to pretext, as well as to custom, practice, and policy, as set forth in the argument above.

32. Request for production 10 seeks the sexual harassment complaints – if any – of Detective Nicole Alcala and Officer Clemons.  These individuals testified in a Civil Service hearing against Defendant Rhett Charles, each providing that Defendant Rhett Charles had sexually harassed them (one of these officers' testimony has been removed from the transcript; the hearing officer ruled the testimony inadmissible, due to age of the complaint). If there are underlying documents supporting this testimony, Defendant City should be compelled to produce the documents; if not, the Defendant should indicate that no such documents exist.

33.  Request for Production No. 11 seeks any and all sexual harassment complaints directed against Defendants Rhett Charles and Jenerio Sanders, and also against Darryl Albert.  News reports reflect complaints directed against Charles and Albert.  Plaintiff heard through the NOPD "grapevine" that there was a complaint directed against Jenerio Sanders also.   If there are underlying documents supporting these complaints, Defendant City should be compelled to say so and produce the documents, if not, the Defendant should say so.

34.  Request for Production No. 12 is withdrawn.

35.  Request for Production No. 13 is directed to the ADA complaint.  The

information sought includes, any and all police officers on light duty or restricted

duty, disability and/or long-term disability from August 29, 2005 (Hurricane

Katrina to today's date).  Plaintiff requested documents reflecting when any such

officers were placed on light duty, restricted duty, disability, or long-term

disability; the nature of the accommodation(s) provided; and the date the officers

went off light or restricted duty, disability or long-term disability.  It is Plaintiff's

understanding there were six (6) officers on light, restricted duty or long-term

disability for a longer period of time than she.  This information is important to

provide the detailed factual analysis required at both the summary judgment and

trial stage.

36.  Request for Production No. 14 seeks the employment files of

comparable employees on the ADA complaint, to-wit:  Glen Markham; Scott

Seymour; and Chris Abbott.  The documents should be produced.  See paragraph

29 above.  The information is also important regarding pretext and the shifting

burden imposed under Title VII and the ADA.

37.  Request for Production No. 15 – has been provided; however, because

Defendant has continued to lodge multiple objections, Plaintiff would request that

the Defendant be compelled to comply with Rule 34(b).

38.  Request for Production No. 16 – Plaintiff asked for the retirement

benefit/pension plan documents and was told by counsel for Defendants to contact

Municipal Police Employees Retirement System.  It is Plaintiff's counsel's

understanding that under ERISA, the employer should have a copy of the Plan

Documents.  This information is important in context of a damage analysis.  If the

documents are in the City's possession, the City should produce the same.

39. Request for Production No. 17 – Plaintiff requested the pay schedule for

police officers with the Department for the year of Plaintiff's hire to present.  The

City has produced a compensation document for the Plaintiff individually (Bates-

stamp #01020) but not for the NOPD generally, for the requested period (Plaintiff's

date of hire to the present).  Plaintiff's counsel will agree to limit the request to the

years 2013-2018.

## INTERROGATORIES

40. There were nine (9) interrogatories, not including sub-parts, addressed to

the Defendant City of New Orleans.  The problems related to the answers are

illustrated in the response to Interrogatory Number 2 (Exhibit 7, Page 2).  The

documents referenced in the Defendant's supplemental answer (Bates-stamped

000081-000091) are attached at Exhibit 8.

41.  The question posed:  Please provide whether the City ever provided

accommodation to Plaintiff with regard to her claim of disability.  If you answer

no, you need not answer the additional information, to-wit:  A. Reason for the

accommodation; B. Description of accommodation; C. Date(s) of accommodation; D. Person who made the decision to provide any accommodation (Exhibit 7, p. 1).

42.   The answer provided was to refer the Plaintiff to documents which comprise a series of letters documenting Rule IX hearings, dated March 12, 2013 (noticing hearing and requiring Plaintiff to read Rule 2 (Moral Conduct) Paragraph 3 (Honesty and Truthfulness); Exhibit 8, Bates-stamp #81); May 23, 2018 (in which Plaintiff is cited under "Disciplinary Actions Section 1. Maintaining Standards of Service; Exhibit 8, Bates-stamp #83) and terminated for being "unable or unwilling to perform the duties of his/her position in a satisfactory manner;" June 6, 2013 (noticing hearing and requiring Plaintiff to read Rule 2 (Moral Conduct) Paragraph 3 (Honesty and Truthfulness); Exhibit 8, Bates-stamp #86); and September 19, 2013 (noticing hearing and requiring Plaintiff to read Rule 2 (Moral Conduct) Paragraph 3 (Honesty and Truthfulness); Exhibit 8, Bates-stamp #89).

43.    Rule 33(d) of the Federal Rules of Civil Procedure provides that "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by (1) specifying the records that must be reviewed, in sufficient detail to

enable the interrogating party to locate and identify them as readily as the

responding party could, and (2) giving the interrogating party a reasonable

opportunity to examine and audit the records and to make copies, compilations,

abstracts and summaries."  This Court has held that responses to interrogatories

under Rule 33(d) are "incomplete and evasive" where they "fail to indicate whether

the identified documents contain *all* of the requested information."  *Courtenay v.*

*Mass. Bay Ins. Co.*, No. 07-0976, 2008 U.S. Dist. LEXIS 136327 at *11 (E.D. La.

2008), *citing to Pabst Licensing GmbH Patent Litigation*, No. Civ. A. 99-MD-

1298, 2001 WL 797315, at *6 (E.D. La. July 12, 2001).

44. The answer to the Plaintiff's interrogatory cannot be ascertained from

the documents identified in the City's response.  None of the documents contains

any reference to accommodations requested by the Plaintiff, or provided by the

City.  The copy of the letter dated May 23, 2018 does contain reference to

Plaintiff's medical issues, but does so in the context of supporting the conclusion

that she is "unable or unwilling" to perform her job duties, and therefore that her

employment is terminated.

45.  As to the Defendant's response to Interrogatory Number 9, the same

problem exists.  The question is simple: "Do you contend a Rule IX hearing is not

punitive?"  Defendant City points to documents: CITY 000004-5, attached at

Exhibit 9.  The answer to this interrogatory cannot be ascertained merely by

reference to this document.  Defendant City should have a representative answer

the question(s) and swear to the veracity of the answer under oath.

46. Interrogatory Numbers 3,[6] 4,[7] 5,[8] 6,[9] 7,[10] and 8[11] are simply not

answered (Exhibit 1, pp. 2-10).  The questions are met with the same bombastic

grandiloquence:  the request is overly broad in scope, unduly burdensome and

vague, and highly invasive.  The court should compel answers to these

interrogatories.  The objections are designed to never provide answers.

---

[6] Interrogatory No. 3:  Please list the names of all police officers who have reported a disability and/or injury in need of accommodation, during the time period that Plaintiff was employed with the Department.  Please see chart below in providing the additional information the subject of this interrogatory.  The chart asked the name of the officer, date of employment, date of termination, date of notice of injury/disability, nature of accommodation.

[7] Interrogatory No. 4:  Please provide the name and contact information of all persons who have complained on the basis of sexual harassment and/or discrimination against RHETT CHARLES.

[8] Interrogatory No. 5:  Please provide the name, and contact information for all persons who have complained on the basis of sexual harassment and/or discrimination against JENERIO SANDERS.

[9] Interrogatory No. 6:  Please provide the names of, and contact information for, all persons who have complained on the basis of sexual harassment and/or discrimination against DARRYL ALBERT.

[10] Interrogatory No. 7:  Please provide the names of, and contact information for, all persons who have complained on the basis of sexual harassment and/or discrimination against RAYNMOND BURKART.

[11] Interrogatory No. 8:  Please provide the names of, and contact information for, all persons who have complained of retaliation by the New Orleans Police Department, for complaining about violation(s) of civil rights(s) during employment with the New Orleans Police Department.  With respect to this inquiry, please see the additional information requested, see Chart below [Chart requested information related to name, date of complaint, basis of retaliation (example, but/for race); whether suit was filed and case number complainant is still employment and reason for leaving].

47.   Interrogatories 4, 5, 6 & 7 seek information with respect to whether sexual harassment complaints have been lodged against individual Defendants herein.  All individual Defendants are current or former employees of City of New Orleans Police Department.  All have served in supervisory positions and in a supervisory role with respect to the Plaintiff.

48.   This type of information is relevant in a sexual harassment and workplace discrimination case.  The information sought is also consistent with Fed. R. Civ.P. Rule 26(b), "Unless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regard any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relevant access to the relevant information, the parties' resources, the importance of discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

49.   Plaintiff is a former police officer for the City of New Orleans, who complained of workplace discrimination in violation of her rights under Title VII, the ADA, and section 1983.  Plaintiff's pleadings implicate both federal statutory rights and constitutional protections.

50.  Plaintiff's complaints are consistent with the Justice Department's investigation into the NOPD for its violation of the rights of citizens.  The investigation and report focused primarily on the NOPD's interaction with the general population, rather than on interdepartmental civil rights violations. However, it did reveal a departmental pattern of concealment of unlawful activities, by failing to maintain a proper complaint process and keep records, and also by retaliating against those who complained.  The  individual supervisors' conduct, and how the NOPD addressed any complaints of malfeasance by these individual supervisors, is important in establishing both the underlying discrimination case and the pattern, practice and policy concerns under Section 1983.

51. The discovery sought is proportional to the case and does not seek unlimited access to information.  Identifying those who have complained of discrimination is readily determinable and obtained from data banks in the control of the City (EEOC reports, Human Resources, etc.).  To pretend the requests related to discrimination and ADA accommodations are unattainable or burdensome is inconsistent with the technology associated with electronic recordkeeping.  In addition, this type of information is solely in the control of NOPD.  Rumors of complaints – whether based on sex or otherwise – are just rumors.  The underlying data is necessary, in order to prove Plaintiff's case of

discrimination, harassment, and the failure to protect her federally protected

statutory and constitutional rights.  *See Carter v. H2R Holdings, LLC*, 2017 WL

2439439, at *4 (N.D. Tex. June 6, 2017 (amendments "do not alter the basic

allocation of the burden on the party resisting discovery); *see Cont'l W. Insur. Co.

v. Opechee Constr. Corp.,* 2016 WL 865232, at *1 (D.N.H. March 2, 2016) ("Once

a showing of relevance has been made, the objecting party bears the burden of

showing that discovery request is improper.").

52.  Finally, with respect to the individual Defendants' responses to

Plaintiff's requests for responses to interrogatories and production of documents,

the City has simply refused to answer (Responses of individual Defendants at

Exhibit 2). Defendants lodge a global objection on the basis of prematurity, due to

the pending motion to dismiss.  Defendants also lodge global objections to

interrogatories, because they seek information maintained by Defendants in their

capacities as public officials, and are an attempt to circumvent the limitations on

interrogatories properly directed to the City; and to requests for production,

because they seek documents maintained by Defendants in their official capacities,

and therefore that the requests are also an attempt to circumvent the Federal Rules.

53.  Plaintiff has pleaded facts in her First Amended Complaint which, taken

in the light most favorable to the Plaintiff, establish that the individual

Defendants violated her clearly established constitutional right to equal protection,

in the context of discrimination based on sex. Plaintiff's discovery requests to the individual Defendants are tailored to seek information specifically related to each Defendant's actions in that context.[12] At the very least, at this stage, Plaintiff should be entitled to discovery as to facts salient to disposition of the Defendants' qualified immunity defense.

<u>CONCLUSION/PRAYER</u>

54. For the reasons hereinabove stated, the Plaintiff requests that the Court set a hearing on her Motion to Compel and that, after hearing, the Court compel the production of relevant documents and answers to interrogatories, as referenced above.

---

[12] The purpose of the doctrine of qualified immunity is to avoid deterring individuals from public service, inhibiting discretionary action, and distracting public officials from their duties. *Lion Boulos v. Wilson*, 834 F. 2d 504, 507 (5th Cir. 1987). Qualified immunity protects against liability, but it also protects against overly broad pretrial discovery. *Id, citing Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982). Discovery is not overly broad and is permissible prior to disposition of a defendant's claim of qualified immunity when: the Defendant's claim of immunity is partially or wholly based on a question of fact, or when the district court cannot rule on a Defendant's claim of qualified immunity without factual clarification; and when the discovery requests are designed to seek "only those facts needed to rule on the immunity claim." *Lion Boulos v. Wilson* at 507-508. Even narrowly tailored discovery, however, is impermissible until this Court ascertains whether the Plaintiff has pleaded facts which, if taken as true, would overcome the defense of qualified immunity. *Wicks v. Miss. State Emp't Servs.,* 41 F.3d 991 (5th Cir. 1995). Absent a ruling from the Court on the Defendants' motion to dismiss, in which Defendants assert the defense of qualified immunity, Plaintiff is prevented from obtaining discovery from the individual Defendants. Plaintiff respectfully submits that time is of the essence in this matter. The deadline for completion of depositions and discovery is set in the month following filing of the instant pleading. Plaintiff is severely prejudiced by the inability to obtain discovery prior to conducting the parties' depositions.

DATE:  June 16, 2020

Respectfully submitted,

/s/ Ellyn J. Clevenger

_____

Ellyn J. Clevenger (#32395)
Wendy Manard (#29622)
Energy Centre:  1100 Poydras Street
Suite 2610
New Orleans, Louisiana 70163
Telephone: (504) 585-7777
Facsimile: (504) 556-2977

ATTORNEYS FOR THE PLAINTIFF
SHANNON REEVES