UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHANNON REEVES | CIVIL ACTION NO. 19-10766 |
| VERSUS | SECTION "T" |
| | JUDGE GUIDRY |
| CITY OF NEW ORLEANS, ET AL. | |
| | MAG. DIV. (5) |
| | MAGISTRATE JUDGE NORTH |

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER
TO LIMIT DEPOSITIONS OF INDIVIDUAL DEFENDANTS**

**MAY IT PLEASE THE COURT:**

Defendants, the City of New Orleans, and named Individual Defendants, Paul Noel, Jenerio Sanders, Walter Powers, Michael Harrison, Arlinda Westbrook, and Rannie Mushatt,[1] appear pursuant to Fed. R. Civ. P. 26 and respectfully move this Honorable Court to enter into a protective order limiting the depositions of Individual Defendants to specific allegations in Plaintiff's Amended Complaint that are narrowly tailored to uncover only those facts needed to rule on their qualified immunity claim. For the below reasons, the Motion should be granted.

**I.    INTRODUCTION AND RELEVANT BACKGROUND**

The Individual Defendants have pending motions to dismiss before the Court that assert qualified immunity to Plaintiff's §1983 claims against them.[2] Due to the concise Scheduling Order in this case (R. Doc. 79 and 116) and the Court's denial of the Parties' joint motion to continue the trial date and pre-trial deadlines (R. Doc. 110), Individual Defendants have been put

---

[1] Defendants expressly reserve and do not waive all rights, motions and defenses including, but not limited to, the pending motions to dismiss, and the assertion of the defense of qualified immunity. Defendants do not believe that any discovery is necessary for the Court to rule on the pending motions to dismiss and the defense of qualified immunity, but file this motion for protective order in an abundance of caution in light of the upcoming discovery deadline.

[2] *See* R. Doc. 78. The only remaining claims against Individual Defendants are § 1983 claims because Plaintiff cannot assert claims under Title VII and ADA against Individual Defendants who are not her employer and has so conceded. (R. Doc. 44 at pg. 2; R. Doc. 42 at pgs. 2-3).

- 2 -

between the proverbial a rock and a hard place and the depositions of Individual Defendants Harrison, Powers, and Westbrook[3] are currently set to take place on, respectively, July 14, July 15, and July 23.[4] It is anticipated that due to Plaintiff's improper and overbroad written discovery requests directed at Individual Defendants[5] that Plaintiff will attempt to ask Individual Defendants improper and overbroad questions that are well outside of the contours of what is permitted under Fifth Circuit precedent -- only facts that may be needed to rule on their qualified immunity claim (to the extent that the Court does not rule on the motions prior to that time).

**II.     LAW AND ARGUMENT**

Federal Rule of Civil Procedure 26(c)(1) provides: "A party . . . from whom discovery is sought may move for a protective order in the court where the action is pending . . . ." The standard for granting a protective order is "for good cause" and permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Id*. Among the types of protective orders available are those which specify the terms for the disclosure or discovery, limit the scope of disclosure or discovery, limit the persons to which disclosure or discovery is authorized, and require discovery or disclosure to be sealed. *See id*. The decision whether to issue a protective order is within the sound discretion of the trial

---

[3] Plaintiff confirmed in writing on June 24, 2020 that she does not intend to depose Individual Defendants Noel and Mushatt in this case, but that she does want to depose Individual Defendant Sanders. *See* June 24, 2020 Letter, attached hereto as Exhibit A. While the Parties have only agreed on the scheduling of Defendants Harrison, Powers, and Westbrook at this time (as well as the deposition of the Plaintiff) and undersigned counsel is attempting to determine the availability of Defendant Sanders, this Motion and Request for Protective Order is directed at protecting all Individual Defendants represented by undersigned counsel. Individual Defendants Noel and Mushatt maintain and do not waive any rights, arguments, or motions to quash and/or seek protective orders in the event Plaintiff attempts to now take their depositions; but out of an abundance of caution, also join in this Motion.

[4] *See* June 29, 2020 Letter attached hereto as Exhibit B. Throughout this litigation and in agreeing to these depositions, Individual Defendants have consistently maintained and have not waived their objections, arguments, and defenses to Plaintiff's complaints including the pending motions to dismiss. *Id*.

[5] *See, e.g.*, Individual Defendants' Responses to Plaintiff's Discovery Request, attached as Exhibit 2 to Plaintiff's Motion to Compel (R. Doc. 120-3).

court. *See Schafer v. State Farm & Fire Cas. Co.*, No. 06-8262, 2009 WL 650263, at *2 (E.D. La. Mar. 11, 2009) (quoting *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n. 27 (5th Cir. 1999)).

"Qualified immunity shields 'government officials performing discretionary functions' from civil liability for claims under federal law 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Randle v. Lockwood*, 666 Fed. Appx. 333, 335 (5th Cir. 2016) (internal citations omitted). "[Q]ualified immunity constitutes an 'immunity from suit' rather than a mere defense to liability." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). The issue of qualified immunity should be resolved at the earliest possible stage of litigation because "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The Fifth Circuit has long held that an assertion of qualified immunity shields a government official from discovery that is "avoidable or overly broad." *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987). Significantly, "it is only when the district court 'is unable to rule on the immunity defense without further clarification of the facts' and when the discovery order is 'narrowly tailored to uncover only those facts needed to rule on the immunity claim,' that an order allowing limited discovery is neither avoidable nor overly broad." *Wilson v. Sharp*, Civil Action No. 17-84, 2017 U.S. Dist. LEXIS 172071, 2017 WL 4685002, at * 2 (M.D. La. Oct. 17, 2017) (citing *Lion Boulos*, 834 F.2d at 507-508). Although discovery on the issue of qualified immunity is possible, such discovery "must not proceed until the district court first finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 994 (5th Cir. 1995). "If the complaint alleges facts to overcome the defense of qualified immunity, the district

court may then proceed under *Lion Boulos* to allow the discovery necessary to clarify those facts upon which the immunity defense turns." *Id.* at 995.

Under the foregoing standards, there is clearly good cause for the issuance of a protective order limiting the depositions of Individual Defendants in light of their pending qualified immunity defenses. Individual Defendants respectfully request that the Court enter into a protective order limiting the depositions of Individual Defendants to specific allegations in Plaintiff's Amended Complaint that are narrowly tailored to uncover only those facts that may be needed to rule on their qualified immunity claim.[6] The limited topics are as follows:

**Individual Defendant Michael Harrison:**

1. R. Doc. 63, ¶ 123, vii.: Defendant Harrison also approved Plaintiff's termination.

While Plaintiff purports to make the below allegations related to Defendant Harrison's actions and role Plaintiff's ADA claim, the law is clear that to the extent Plaintiff may be attempting to assert a § 1983 claim against any Individual Defendants for violation of the ADA, those claims should not be permitted. An ADA claim may not be brought pursuant to § 1983. *Sullivan v. City of Round Rock*, 2017 U.S. Dist. LEXIS 1, at *7 (W.D. Tex. 9/11/2017). Courts in the Fifth Circuit have held that the ADA has its own enforcement scheme and that claims for violation of the ADA must be brought through at specific avenue. *Sullivan*, 2017 U.S. Dist. LEXIS 145312; *see also Albright v. Sheriffs Dept' Rapides Parish*, 2014 U.S. Dist. LEXIS 132946 (W.D. La. 9/20/14) (holding that the plaintiff could not take "two bites at the apple" by bringing duplicative claims under both the ADA and section 1983").

2. R. Doc. 63, ¶ 116: During her time in this position, Plaintiff initiated a conversation with NOPD Superintendent Michael Harrison, telling him about her

---

[6] Individual Defendants expressly reserve and do not waive the arguments contained in their pending motions to dismiss which warrant dismissal of the Plaintiff's claims against them, and file this motion for protective order in an abundance of caution to comply with the deadlines set forth in the Court's current scheduling order.

- 4 -

PD.29104033.1

migraines, continuous requests for accommodation, and the NOPD's continued refusal to address the issues.

3. R. Doc. 63, ¶ 117: Defendant Harrison was dismissive of the Plaintiff, telling her to take it up with her chain of command.

4. R. Doc. 63, ¶ 123, v.: Defendant Michael Harrison, NOPD Superintendent, failed to properly supervise and/or train his subordinates. Defendant Harrison knew that Plaintiff was suffering, as a result of the NOPD's failure to provide reasonable accommodations;

5. R. Doc. 63, ¶ 123, vii.: Defendant Harrison knew that Plaintiff was not getting any relief from her chain of command, prompting her conversation with him, yet he refused or failed to do any investigation or assist the Plaintiff in any way;

Also, while Plaintiff purports to make the below allegations related to Defendant Harrison's alleged policy making role, it is clear under relevant Fifth Circuit precedent that those allegations do not satisfy the stringent legal standards for overcoming a qualified immunity claim, much less any discovery into the qualified immunity claim:[7]

---

[7] The Fifth Circuit has expressly articulated the standard for a qualified immunity defense, *see Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 995 (5th Cir. 1995), as follows:

> To overcome the immunity defense, the complaint must allege facts that, if proven, would demonstrate that [the defendant] violated clearly established statutory or constitutional rights. [This heightened pleading requirement] *demands more than bald allegations and conclusionary statements*. [The complainant] must allege facts specifically focusing on the conduct of [the defendant] which caused [the plaintiff] injury.

*Id*. (emphasis added). *See Rhodes v. City of Homer,* No. 09-1115, 2010 U.S. Dist. LEXIS 95836, at *15-16 (W.D. La. Sept. 14, 2010) (holding that the complaint "cannot be cast in broad, indefinite and conclusory terms" and "plaintiff must plead specific facts with sufficient particularity to meet all the elements necessary to lay a foundation for recovery, including those necessary to [negate] the defense of qualified immunity"). A plaintiff bringing a Section 1983 individual capacity claim against her supervisor must allege "specific conduct and actions giving rise to constitutional violations." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2003) (citing *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 2003). This legal standard requires substantially more than conclusory assertions: "the plaintiff must allege specific facts giving rise to constitutional violations." *Id.* (citing *Baker v. Putnal,* 75 F. 3d 190, 194 (5th Cir. 1996). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and courts will not deny immunity unless

6. R. Doc. 63, ¶ 79: Defendant Michael Harrison was the Superintendent of Police for the entire department and was the policy maker for the department at the time.

7. R. Doc. 63, ¶ 80: Defendant Harrison, during his service to the Department, failed to change the policies prior to their harm to Plaintiff and violation of her constitutional rights.

8. R. Doc. 63, ¶ 81: Defendant Harrison enforced the custom, policies, and procedures complained about herein, affecting Plaintiff and others.

9. R. Doc. 63, ¶ 82: Defendant Michael Harrison failed to enact policies reflecting the clearly recognized law against sexual harassment in the workplace; failed to enact and implement a sexual harassment policy for the City of New Orleans; and therefore "blessed" the policy permitting the concealment of sexual harassment complaints.

It is clear that Plaintiff has only made "bald allegations and conclusionary statements," that are legally insufficient to overcome the qualified immunity defense, such that any deposition testimony allowed by the Court must be narrowly tailored.

**Individual Defendant Walter Powers:**

1. R. Doc. 63, ¶ 19: Plaintiff related her complaint to Sergeant Walter Powers, Defendant herein, reporting action by Defendant Rhett Charles, Plaintiff's ranking officer. Defendant Charles had made the Plaintiff's employment setting intolerable by references to sex, sexual body parts and/or by using demeaning conduct and language.

---

"existing precedent . . . placed the statutory or constructional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

PD.29104033.1

2. R. Doc. 63, ¶ 25: Defendant Powers asked Officer Williams who the victims were, and Officer Williams gave Powers Plaintiff's name, along with the name of one other female officer.

3. R. Doc. 63, ¶ 60: Defendant Walter Powers engaged in conduct to perpetuate and protect the illegal conduct of Charles. Powers contacted Plaintiff on November 23, 2016, under the guise of investigating Defendant Charles' behavior. Within the following week, Powers had informed Defendant Charles of everything that the Plaintiff had reported. This activity by Charles was part of the Defendant's custom and policies in existence at the time, which Defendant was aware of. Powers' failure to maintain confidentiality severely compromised the investigation, and facilitated Charles' ongoing unlawful behavior. For example, Defendant Charles knew of the audio recording (made by the Plaintiff to capture some of Defendant Charles' statements). Had Defendant Charles not been made aware of the contents of that recording, he may have denied having made the statements, which would have been a terminable offense. Instead, Charles was able to craft a response ahead of time, attributing his comments to a joking group conversation.

4. R. Doc. 63, ¶ 125: Plaintiff made her initial complaint on or about the 23rd day of November 2016, to Sergeant Walter Powers.

5. R. Doc. 63, ¶ 128: At the time of Plaintiff's November 2016 complaint, Defendant Powers called Plaintiff, who was at home. Defendant Powers asked whether he could come to Plaintiff's home that evening to take her report.

6. R. Doc. 63, ¶ 129: Plaintiff informed that she did not feel comfortable giving her statement at home, given the topic and the fact that she lived alone. Defendant Powers informed that he would contact NOPD's Public Integrity Board (PIB) and would call Plaintiff right back to take a statement from her.

7. R. Doc. 63, ¶ 130: Defendant Powers solicited sensitive information from Plaintiff, ostensibly to take a complaint, but never contacted Plaintiff again regarding her complaint.

8. R. Doc. 63, ¶ 131: Within a few days of Plaintiff's report to Defendant Powers, Plaintiff witnessed Defendant Powers and Defendant Charles having a conversation in Charles' office. When Powers noticed the Plaintiff outside, he closed Charles' office door.

**Individual Defendant Arlinda Westbrook:**

1. R. Doc. 63, ¶ 48: At least eight (8) women have contacted the Public Integrity Bureau and/or Deputy Chief Arlinda Westbrook to complain of Defendant Charles' behavior.

2. R. Doc. 63, ¶ 49: Defendant Westbrook, Deputy Chief of the Public Integrity Bureau, refused to provide names of other complainants to the Plaintiff, fearing a lawsuit.

3. R. Doc. 63, ¶ 50: Defendant Westbrook stated that those women's complaints could not be considered, in investigation of Plaintiff's complaint, because none had made official reports.

4. R. Doc. 63, ¶ 51: Defendant Westbrook told Plaintiff that all of the previous women had been afraid to file complaints, from fear of retaliation or being "blackballed," like the Plaintiff had been.

5. R. Doc. 63, ¶ 56: Defendant Westbrook did little or nothing with the complaints, permitting Defendant Charles to prey on Plaintiff and other females.

6. R. Doc. 63, ¶ 61: Defendant Arlinda Westbrook, Deputy Chief of NOPD's Public Integrity Bureau (PIB), simply failed to do her job, in violation of federal law, in the following respects.

i. Defendant Westbrook worked against the Plaintiff in the complaint process. Defendant Westbrook failed to reassign Defendant Charles, after receiving Plaintiff's complaint;

ii. Plaintiff was forced to continue working under Charles, until Westbrook was contacted by the Independent Police Monitor.

iii. On or about August 1, 2017, Westbrook told Plaintiff that her complaint against Charles was not valid, and that the complaints of many other women could not be considered;

iv. Westbrook also told Plaintiff that Defendant Charles had no history of sexual harassment and nothing could be done about her complaint;

v. The news media reported Westbrook asserted Plaintiff never did file a complaint and thus there was nothing to investigate;

vi. Despite the long history of complaints against Defendant Charles for sexual harassment, Westbrook failed to do anything toward implementing a policy of

sexual harassment. Such a policy could have protected the victims (for example, by mandating confidentiality and prohibiting all forms of retaliation);

vi.. Compounding the problem, Westbrook adopted the position that, because no such policy existed, nothing could be done about Plaintiff's victimization;

viii. Westbrook's stance is in violation of long-standing federal law;

ix. Although many of Defendant Charles' victims had complained to Defendant Westbrook, she failed to take any action to protect them. Westbrook did nothing to address, correct, or prevent Defendant Charles' illegal actions, tacitly condoning the continued victimization of female officers;

x. Defendant Westbrook was a member of the three-person panel designated to address the complaint against Defendant Charles, and participated in the decision to impose a one-day suspension.

7. R. Doc. 63, ¶ 143: Plaintiff wrote her own statement, and requested a meeting with PIB Chief Westbrook. Defendant Westbrook informed Plaintiff that there was not really anything that the NOPD could do about Defendant Charles' behavior, as the NOPD did not have a policy specifically prohibiting sexual harassment in place.

8. R. Doc. 63, ¶ 144: Westbrook also told Plaintiff that the NOPD could not do anything because Officer Troy Williams, rather than the Plaintiff, had initiated the report.

9. R. Doc. 63, ¶ 155: On August 1, 2017, Plaintiff met with Defendant Westbrook, Defendant Johnson, Ursula Price, and Cecile Tebo. The meeting had apparently been prompted by an article published in the Times-Picayune on July 12, 2017.

Plaintiff was not named in the article, but Westbrook stated that she had been. Westbrook told Plaintiff that they were not investigating her case because her complaint was merely part of another case in which Plaintiff's name had been mentioned. Defendant Westbrook said that Defendant Charles had no history of sexual harassment and that no other victims had come forward, which Plaintiff knew to be false. Apparently, Defendant Westbrook meant that Charles had no documented disciplinary history for sexual harassment, since clearly many women had complained about his behavior.

10. R. Doc. 63, ¶ 158: The three members of the panel who decided on Defendant Charles' reprimand were Chief Arlinda Westbrook (Defendant herein); Chief Paul Noel (Defendant herein); and Chief Rannie Mushatt (Defendant herein). Rannie Mushatt and Rhett Charles are close friends.

**Individual Defendant Jenerio Sanders:**

1. R. Doc. 63, ¶ 58, b.: Defendant Jenerio Sanders, as Defendant Rhett Charles' ranking officer, knew of Defendant Charles' behavior; failed to properly supervise and/or train Charles; and/or failed to take action to correct or prevent Charles' unlawful actions. This includes, but is not necessarily limited to, the following acts or omissions:

    i. Failure to investigate Plaintiff's complaint;

    ii. Failure to maintain confidentiality with respect to Plaintiff's complaint;

    iii. Allowing Defendant Charles to continue to work as Plaintiff's supervisor, after Plaintiff made the complaint, and after Defendant Charles knew about the complaint;

iv. Failure to investigate previous complaints of sexual harassment against Defendant Charles;

v. Failure to take action to prevent or correct Defendant Charles' constant sexual harassment of other female officers, such as removing Defendant from his supervisory role and/or taking disciplinary action against Defendant Charles.

**Individual Defendant Paul Noel: [8]**

1. R. Doc. 63, ¶ 59: Defendant Paul Noel, as ranking officer for Defendant Jenerio Sanders, was also responsible for supervising Defendant Charles. Defendant Noel knew of Charles' behavior; failed to properly supervise and/or train Charles; and/or failed to take action to correct or prevent Charles' unlawful actions. This includes, but is not necessarily limited to, the following acts or omissions:

    i. Failure to investigate Plaintiff's complaint;

    ii. Failure to maintain confidentiality with respect to Plaintiff's complaint;

    iii. Allowing Defendant Charles to continue to work as Plaintiff's supervisor, after Plaintiff made the complaint, and after Defendant Charles knew about the complaint;

    iv. Failure to investigate previous complaints of sexual harassment against Defendant Charles;

    v. Failure to take action to prevent or correct Defendant Charles' constant sexual harassment of other female officers, such as removing Defendant from his supervisory role and/or taking disciplinary action against Defendant Charles;

---

[8] Plaintiff confirmed in writing on June 24, 2020 that she does not intend to depose Individual Defendant Noel in this case and Individual Defendant Noel maintains and does not waive any rights, arguments, or motions to quash and/or seek protective orders in the event Plaintiff attempts to now take his depositions; but out of an abundance of caution, also joins in this Motion.

      vi. Participating in the decision to assess a nominal punishment to Defendant Charles (one-day suspension);

2. R. Doc. 63, ¶ 158: The three members of the panel who decided on Defendant Charles' reprimand were Chief Arlinda Westbrook (Defendant herein); Chief Paul Noel (Defendant herein); and Chief Rannie Mushatt (Defendant herein). Rannie Mushatt and Rhett Charles are close friends.

**Individual Defendant Rannie Mushatt:[9]**

1. R. Doc. 63, ¶ 72: After Plaintiff's complaint was brought to Mushatt's attention, Mushatt failed to investigate Plaintiff's complaint.

2. R. Doc. 63, ¶ 73: Mushatt failed to maintain confidentiality with respect to Plaintiff's complaint.

3. R. Doc. 63, ¶ 74: Mushatt allowed Defendant Charles to continue to work as Plaintiff's supervisor, after Plaintiff made the complaint, and after Defendant Charles knew about the complaint.

4. R. Doc. 63, ¶ 75 Defendant Mushatt failed to investigate the previous complaints of sexual harassment against Defendant Charles, even though Defendant's Charles' conduct was open and obvious and common knowledge in the Department; this failure was consistent with the City's custom, policies, and procedures.

5. R. Doc. 63, ¶ 76: Defendant Mushatt failed to take action to prevent or correct Defendant Charles' constant sexual harassment of other female officers, such

---

[9] Plaintiff confirmed in writing on June 24, 2020 that she does not intend to depose Individual Defendant Mushatt in this case and Individual Defendant Mushatt maintains and does not waive any rights, arguments, or motions to quash and/or seek protective orders in the event Plaintiff attempts to now take his depositions; but out of an abundance of caution, also joins in this Motion.

- 13 -

  as removing Defendant from his supervisory role and/or taking disciplinary action against Defendant Charles; this failure was consistent with the City's custom, policies, and procedures.

6. R. Doc. 63, ¶ 77: Defendant Mushatt participated in the decision to assess a nominal punishment to Defendant Charles (one-day suspension), with Defendant's pay remaining the same, even though his sergeant stripes were supposedly removed.

7. R. Doc. 63, ¶ 158: The three members of the panel who decided on Defendant Charles' reprimand were Chief Arlinda Westbrook (Defendant herein); Chief Paul Noel (Defendant herein); and Chief Rannie Mushatt (Defendant herein).  Rannie Mushatt and Rhett Charles are close friends.

### III. CONCLUSION

Based on the foregoing, Individual Defendants have demonstrated the requisite good cause for the issuance of a protective order and respectfully pray that the Court enter a protective order limiting the depositions of Individual Defendants to the specific allegations in Plaintiff's Amended Complaint that are narrowly tailored to uncover only those facts that may be needed to rule on their qualified immunity defense (to the extent that it is not ruled on before these depositions).

        Respectfully submitted,

        **PHELPS DUNBAR LLP**

        BY: */s/ Rebecca Sha*
           KIM M. BOYLE (#18133)
           BRANDON DAVIS (#29823)
           REBECCA SHA (#35317)
           365 Canal Street • Suite 2000
           New Orleans, Louisiana 70130-6534
           Telephone: (504) 566-1311

        Telecopier: (504) 568-9130
        kim.boyle@phelps.com
        brandon.davis@phelps.com
        rebecca.sha@phelps.com

        **ATTORNEYS FOR DEFENDANTS, THE CITY OF NEW ORLEANS, PAUL NOEL, ARLINDA WESTBROOK, JENERIO SANDERS, WALTER POWERS, RANNIE MUSHATT, AND MICHAEL HARRISON**