UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SHANNON REEVES                                    CIVIL ACTION NO. 19-10766


VERSUS                                            SECTION "T"
                                                  JUDGE GUIDRY


                                                  MAGISTRATE DIVISION 5
                                                  MAGISTRATE JUDGE NORTH
CITY OF NEW ORLEANS;
RHETT CHARLES; JENERIO SANDERS;
PAUL NOEL;
RANNIE MUSHATT;
WALTER POWERS;
ARLINDA WESTBROOK;
RAYMOND BURKART, SR.;
AND
MICHAEL HARRISON

**PLAINTIFF, SHANNON REEVES', WITNESS AND EXHIBIT LIST**

    Plaintiff, Shannon Reeves, submits this, her Witness and Exhibit List; Plaintiff submits as

follows:

    1.  Shannon Reeves

        c/o
        Wendy Manard (#29622)
        Ellyn J. Clevenger (#32395)
        Energy Centre: 1100 Poydras Street
        Suite 2610
        New Orleans, Louisiana 70163
        Telephone: (504) 585-7777
        Facsimile: (504) 556-2977

        [Plaintiff has information surrounding the underlying facts and damages which form

        the basis of the claims asserted herein.]

    1.  Rhett Charles

    2.  Jenerio Sanders

3. Rannie Mushatt

4. Walter Powers

5. Arlinda Westbrook

6. Raymond Burkart, Sr.

7. Michael Harrison

[Persons/witnesses/defendants listed above can be contacted through their counsel.]

[Persons listed as witnesses 2-8 are defendants in the above cause and have information regarding the underlying facts, as set out in the pleadings; each can address actions taken and/or not taken with regard to their interaction with Plaintiff; each can address policies and procedures of the department; their training as law enforcement officers; and the civil right laws protecting persons from discrimination, sex, disabilities and retaliation in these contexts.]

8. Stephanie Landry

[Landry can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Witness can testify regarding her interactions with Plaintiff, including Rule IX hearings related to Plaintiff's employment, the nature and purpose of those proceedings, accommodations requested by Plaintiff and action(s) taken in response to such request(s); what action witness took in response to Plaintiff's request to accommodation for her migraine headaches, and/or what action witness took in response to Plaintiff's presentation of documentation from her neurologist regarding requested accommodation Plaintiff's migraine headaches; witness has information as

to the underlying facts set out in the pleadings; witness can address policies and procedures of the department; her training as a law enforcement officer; and the civil right laws protecting persons from discrimination based on sex and/or disability, and retaliation in these contexts.]

9.  Darryl J. Albert

[Albert can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness can provide testimony with regard to Plaintiff's complaint of sexual harassment directed against Albert when he was Plaintiff's supervisor; witness has information with regard to decommissioning Plaintiff instead of addressing the requirement, under the law, to provide accommodation; this witness also has information concerning the release of Plaintiff's medical history/ disclosure of Plaintiff's HIPAA-protected medical information; can testify with regard to the policy, custom and practice of the Department at the time, including the Department's refusal to accept charges/investigate the complaint against him.]

10.  Arlinda Westbrook [repeat]

[Defendant Westbrook can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Additional reference to defendant/witness: Defendant can provide testimony with regard to the Department's sexual harassment policies – including the policies and

procedures in place prior to and after the Consent Decree entered between the United States and the City of New Orleans.

Witness can provide testimony as to disciplinary policies and procedures, both generally and specifically with respect to how said policies and procedures interact with policies governing sexual harassment and retaliation.  Witness can provide testimony as to disciplinary policies and procedures, and how they have changed over the past decade, since Witness took office.  Witness can provide testimony as to the fact that no disciplinary policy or procedure existed with respect to sexual harassment, prior to May 2017.

Witness can provide testimony as to the circumstances surrounding her appointment to the office, specifically, the concerns articulated in the report promulgated by the Department of Justice regarding failure to adequately investigate and track allegations of discriminatory and illegal behavior; the subsequent Consent Decree; and implementation thereof.

Witness can provide information as to the requirement that the Public Integrity Board include in an annual report "a summary of each misconduct complaint, including a description of the allegation, the final approved disposition, and any discipline imposed;" and specifically can identify identification of the requisite information as to Plaintiff's complaints, in the PIB's 2016 and/or 2017 annual reports.  Witness can provide information with respect to compliance with the Consent Decree between the Department of Justice and the City, including the requirement that officers with complaints of certain policy violations not be promoted or maintained in certain supervisory positions; and what actions her office took to ensure that this requirement

was complied with, including manner and methods of record-keeping with respect to complaints, investigation and discipline. Witness can provide information with respect to what actions her office took in response to the Consent Decree's requirements as to changes in policy.

Witness can provide information as to the Memorandum of Understanding between the NOPD and the IPM, and policies and procedures as stated therein regarding complaint processing.

Witness can provide information about mandatory reporting policies and procedures, with respect to complaints of sexual harassment.

Witness can provide information about investigation and disposition of complaints. Witness can also provide testimony regarding the contents of the July 30, 2014 letter from the Office of Independent Police Monitor, directed to her (Westbrook) in her capacity as Deputy Superintendent for the New Orleans Police Department; witness can provide historical context and meaning to the letter, in particular the following: "From 2011 to 2013, the OIPM received 26 contacts from NOPD officers or employees involving an element of retaliation or fear of retaliation. The most common forms of internal retaliation alleged by NOPD employees were retaliatory complaints filed against them, intimidation of complainants or potential witnesses and reassignment or threat of reassignment." The witness can provide information about the underlying documents, and/or what action the Department took to address the complaints, once this information was brought to the Department's attention. This witness can provide information about the policies which were initially drafted to address these concerns, and her retaliation and interaction with Plaintiff. Witness can

provide information as to the "neglect of duty" and "professionalism" allegations made, from 2010 through the 2018.

Witness can provide information with regard to multiple complaints of sexual harassment against Defendant Rhett Charles; the complaint of sexual harassment against Jenerio Sanders; multiple complaints of sexual harassment against Darryl Albert; sexual harassment complaints against Bradley Rhodes; sexual harassment complaints and/or sexual misconduct complaints against Octavio Baldassero.

Witness can provide information regarding the database system, purchased by the Inspector General for the Public Integrity Bureau in 2011 for tracking improper behavior in the NOPD.

Witness can provide information as to her office's cooperation with the City's plan to fulfill the Consent Decree in 2020.

11. Christopher Johnson

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness was lead investigator in the internal probe and generated a report after his investigation.  The report's contents are important, particularly as to what each woman reported; when each first complained; and what actions were taken by the Department in response.  Witness will also be asked about whether the demotion is a demotion in name only (salary, off-duty work, etc.).  Witness will also be questioned with regard to the differences in the sexual harassment policies over time, how records are kept, and whether he took this into consideration when characterizing the

number of sexual harassment complaints previously filed against Defendant Charles. Witness can provide information surrounding his interview of "three male officers who told the internal invest`igator they had either witnessed Charles make potentially offensive or sexually suggestive comments to their female colleagues or had heard from female colleagues he had done so, according to the PIB report." [quote derived from Nola.com story referenced below]; whether any action was taken against the male employees for the failure to report; and whether then-existing policy compelled the male employees to report known violations of workplace policies and violations of rights of another. Witness can provide information as to his interactions and communications with the Plaintiff in the context of investigation of her complaint; including the timeline and any action taken in the context of protecting the Plaintiff.]

12. Susan Hutson, Independence Police Monitor, Office of Independent Police Monitor, 525 St. Charles Avenue, New Orleans, Louisiana, 70130-3049, 504.681.3223. [Witness can testify with respect to how sexual harassment complaints were catalogued under the old policies, and the problems this created in tracking complaints. Witness can also testify as to confusion about reporting, discrimination and retaliation in the workplace, and protecting employees. Witness can provide information as to her office's role, and the historical background and supporting data for her letter dated July 30, 2014. Witness can testify about discrimination, whether sex-based or otherwise, and why protection against retaliation is important. Witness can provide information about complaints to her office, including by the Plaintiff.

Witness can provide information regarding the database system, purchased by the Inspector General for the Public Integrity Bureau in 2011 for tracking improper behavior in the NOPD.

Witness can provide information about working toward the goal of fulfilling the Consent Decree in 2020.]

13. Ursula Price [Independence Police Monitor]

[Witness' current address and contact information:  NEW ORLEANS WORKERS' CENTER FOR RACIAL JUSTICE. 217 N. Prieur St. New Orleans, LA 70112. Telephone: (504) 309-5165. Fax: (504) 309-5205.]

 [Witness can testify with respect to how complaints of sexual harassment were catalogued under the old policies; and the problems this created in tracking complaints.  Witness can testify as to confusion about reporting discrimination/retaliation in the workplace, and confusion related to protecting employees.  Witness can also provide predicate information with regard to the role of her office; historical background and supporting data to support her letter dated July 30, 2014 with respect to retaliation (sex-based or otherwise); and why protection against retaliation is important.  Witness can provide information about Plaintiff's communications with the Independent Police Monitor's Office in the context of complaining of illegal activity.  Witness can testify about Plaintiff's reporting of complaints against Charles, and her audio recording of Charles.

Witness can provide information regarding the goal of fulfilling the Consent Decree's requirements in 2020.]

14. Michael Harrison, NOPD Superintendent

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness has knowledge as to approving/finalizing recommendation of Plaintiff's termination and factors considered; witness can provide predicate information regarding policies and procedures of the Department; his background and role in the Department generally, and specifically in the context of policies and procedures. Witness can testify as to his ability to intervene in response to known violation(s) of the law.  Witness can provide information with respect to the four officers who were on limited duty for a longer period of time than was the Plaintiff.

Witness can provide information as to his statements praising the disciplinary process regarding Defendant Rhett Charles.]

15. Detective Nicole Alcala

16. Officer Kimberly Clemons

[Witnesses 16-17 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witnesses Alcala and Clemons (witnesses 16 and 17) are two of the many persons, other than Plaintiff, who have complained with respect to Charles' offensive and illegal workplace conduct; others subject to discovery.  This information is in the City's possession.  Witnesses 16 and 17 testified at the Civil Service hearing for Rhett Charles.  These individuals can testify regarding conditions of employment, and Rhett Charles actions (touching, comments, sex) with recruits.  Their testimony is

consistent with the Departments long-term previous knowledge of Charles' behavior and reputation, prior to the Plaintiff's complaint, and is relevant as to "quid pro quo." Testimony is also relevant to policy, practice and custom in the Department at the time.  Witnesses can testify as to the NOPD's "put out or shut up" policy.]

17. [Witness #3 at Civil Service Hearing; testimony redacted; name unknown at this time]

[Witness 18 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[The name of Witness 18 is unknown at this time; Witness 18 testified at the Civil Service hearing for Rhett Charles, but the testimony of Witness 18 was redacted from the transcript of the proceedings provided to the Plaintiff.  Witness 18 is another one of many persons, other than Plaintiff, who have complained with respect to Charles' offensive and illegal workplace conduct, subject to discovery.  This information is in the City's possession.  This individual can testify about conditions of employment, and Rhett Charles' actions (touching, comments, sex) with recruits.  Her testimony is consistent with the Department's long-term knowledge of Charles' behavior and reputation prior to their interaction and is relevant as to "quid pro quo." Testimony is also relevant to policy, practice and custom in the Department at the time.  Witness can attest to the NOPD's "put out or shut up" policy.  This witness will be identified in discovery.]

18. Shade Shepard

[Witness 19 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Witness 19 can provide information about inappropriate conduct by Defendants Jenerio Sanders and/or by Darryl Albert; this witness' testimony is relevant to and consistent with the practice, policy and procedures of the Department about untoward conduct based on sex.]

19. Director of Human Resources or Person of Responsibility with the Department

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Witness has relevant knowledge of policies and procedures, the interrelationship between the City of New Orleans and the New Orleans Police Department's policies; sexual harassment policies and implementation; the City's Human Resources Department's role in decision making in the Police Department; sick leave, payroll, neglect of duty, and disciplinary policies and implementation thereof. This witness' name will have to be provided by the City of New Orleans.]

20. Michelle Woodford

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Supervisor in APR prior to Rhett Charles' taking over responsibility; witness can address Plaintiff's work under her supervision, and the department and her work history in the department.]

21. Troy Williams

22. Sergeant Walter Powers

23. Sergeant Christopher Johnson

24. Keith Ambrose

25. Kevin Pozzo

[Witnesses 22-26 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana 70130-6534; 504.566.1311.]

[Williams can testify with respect to Charles' behavior and related issues. Powers can testify with regard to policies and procedures in the Department and his communication with the Plaintiff as to taking the initial report; Powers can also testify with respect to Plaintiff's affirming sexual harassment by Rhett Charles, and Powers' communication with Rhett Charles. Johnson can testify with regard to policies and procedures in the Department and his interaction with Plaintiff regarding her complaint. Witnesses Ambrose and Kevin Pozzo can testify regarding their respective backgrounds; and facts related to Plaintiff's telling them about harassment and their reactions/responses thereto.]

26. Sergeant Kenny Quetant

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Sergeant Quetant can testify to asking Plaintiff to work as his administrative assistant and the response to same by his superiors; witness can also provide testimony that, after Plaintiff made her complaint of sexual harassment against Defendant Charles, this witness gave Plaintiff heads-up that everyone knew about her complaint, including Defendant Charles, and including the fact that Plaintiff had a recording, and that people were laughing and joking about it in the Department.  This witness can also provide information regarding another female officer's having confided in him that she'd had sex with Defendant Charles, and that Charles had given her a sexually transmitted disease (STD).]

27. Michael Riles

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Officer Riles can testify to asking Plaintiff to come back to Homicide in a limited-duty capacity and the reaction of superiors to this request; witness also can testify with regard to Plaintiff's solve rate while in Homicide.]

28. Glenn Markam

29. Scott Seymour

30. Chris Abbott

31. Juan Barnes

[Witnesses 29-31 can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Comparable employees who were out for the same or for a longer period of time, and/or who were provided accommodation such that they were able to work, including formation of entirely new position(s) within the department to accommodate their limitation(s); remaining officers who are comparable in an ADA context are the subject of discovery, and subsequent supplementation of these disclosures; can provide information as to whether they were classified as being on "restricted duty;" "light duty;" or "full duty" status; what their respective abilities and privileges were, while classified as full-duty status, accommodations which enabled them to be in full-duty status.]

32. Sgt. Rudolph Thomas

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[This witness can provide predicate information/information concerning his history with the Department, information regarding Rhett Charles' well-known reputation for offensive and illegal behavior in the department related to sex; department policy and custom and procedure regarding neglect of duty; how Charles' behavior toward women was protected; how complaints are discouraged through threat of retaliation; how retaliation is meted out on those who complain; how Plaintiff's reporting of illegal activity (including harassment) in the Department has subjected her to/made

her the target of retaliation at all levels; how the Department has a well-known policy
of "put out or shut up" with respect to female officers. This witness can also provide
testimony as to Charles' ongoing role in the Department, including his ongoing
participation in prestigious extra-duty assignments. Witness' testimony is relevant
and consistent with practice, custom and policy of the Department.]

33.  Enjolie Harris

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon
E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New
Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness has information about/knowledge of Plaintiff's medical records and
information; witness can testify as to the violation of Plaintiff's confidentiality and
the alienation which took place against Plaintiff.]

34. Caroline Dalton

35. Angel Clemons

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon
E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New
Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witnesses 34, 35 have information about working with Plaintiff, and informing
Plaintiff they had a problem with her "getting people in trouble;" these witnesses'
testimony is relevant and consistent with retaliation for complaints of illegal
conduct/activity in the Department.]

36. Captain Ernest Demma

[Witness can be contacted through the City's counsel, to-wit: Kim M. Boyle, Brandon E. Davis, Rebecca Sha, PHELPS DUNBAR, LLP, 365 Canal Street, Suite 2000, New Orleans, Louisiana  70130-6534; 504.566.1311.]

[Witness has information with regard to Plaintiff's job transfers; rejection of requests, by individuals higher up the chain of command, for transferring Plaintiff, including rejections of requests for transfers to positions which might better have accommodated Plaintiff's limitations.  This witness can provide information with regard to predicate information; this witness can provide information with regard to the Department's policies and procedures.]

37. Sergeant Barrett Dewall

[Witness contact information:  employee of City of New Orleans Police Department, can be contacted through counsel for the City]

[Witness can provide information with regards to his employment and the reputation of Rhett Charles in the department for sexual discrimination and sexual harassment, known information in the Department by Charles' supervisors and underlings.]

38. Courtney Hebert

[former NOPD employee; contact information will be supplemented; witness can provide information with respect to the Department's tolerance of illegal behavior from, and failure to investigate, complaints against supervisory personnel; can provide testimony as to personal experience regarding a complaint she filed against then-Commander of the Crime Lab, Darryl Albert; can provide information as to the NOPD's custom of tolerating retaliation for complaints filed; the custom of not keeping complaints confidential, so that supervisors could file preemptively

retaliatory complaints against subordinates submitting complaints, prior to a formal

complaint file having been opened with respect to any such subordinate; the NOPD's

"put out or shut up" policy with respect to sexual harassment; and the custom of

sexual misconduct and quid pro quo in the Department.]

39. Any witnesses whom Plaintiff is unable to name at this time due to incompleteness of

discovery, but whom Plaintiff subsequently identifies and supplements;

40. Any witness called by any other party;

41. Rebuttal witnesses.

   MEDICAL/ EXPERT WITNESSES

42. Rennie W. Culver, M.D., Ph.D.

[Witness contact information:  30121 35th Street, Suite B, Metairie, Louisiana  70001,

504.455.9990; business records affidavit and medical records will be obtained for

trial purposes; witness can provide testimony of treatment of plaintiff, condition,

prognosis, diagnosis.]

43. Nicholas G. Pejic, M.D., Atlas Psychiatry

44. [Witness' contact information:  1301 Antonine Street, New Orleans, Louisiana

70015; 504.899.1682; business records affidavit and medical records will be obtained

for trial purposes; witness can provide testimony of treatment of plaintiff, condition,

prognosis, diagnosis.]

45. Troy A. Beaucoudray, M.D.

[Witness' contact information:  4213 Teuton Street, Metairie, Louisiana  70006,

504.454.7246; business records affidavit and medical records will be obtained for

trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

46. Wendy J. Jamison, M.D., APMC [retired]

[Witness' contact information:  4224 Houma Boulevard, Suite 350, Metairie, Louisiana  70006; 504.780.9112; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

47. Eliot Levin, M.S.W., L.C.S.W. [deceased]

 [Witness' previous contact information:  5000 Cleveland Place, Metairie, Louisiana 70003; 504.452.6537; business records affidavit and medical records will be obtained for trial purposes; information relevant as to treatment of plaintiff, condition, prognosis, diagnosis.]

48. Erich Conrad, M.D. [current psychiatrist]

[Witness' contact information: 3450 Chestnut St # 3, New Orleans, LA 70115 ; 504.897-8558; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

49. Cecile Tebo, LCSW

50. [Witness' contact information: 3528 Vincennes Pl, New Orleans, LA 70125-4352 ; 504.908.5799; Witness can testify regarding her background and working with Plaintiff as a licensed clinical social worker; business records affidavit and medical records will be obtained for trial purposes; witness can provide testimony of treatment of plaintiff, condition, prognosis, diagnosis.]

51. Dr. W. V. McDermott, Clinical Psychologist

[Witness' contact information: 400 Poydras, Suite 1950, New Orleans, Louisiana 70116; 504.322.3837; 504.322.3847; Witness hired by the City and wrote a letter dated 5.22.2014 wherein he opined "On the basis of my evaluation procedures and review of her present job description, it is my opinion that she is fit for duty, without restriction, at this time."]

52. William Arendell, LCSW, LLC

[Witness' contact information: 716 Adams Street, New Orleans, Louisiana  70118; 504.358.0377.  Witness is capable of providing testimony with regard to his background and his working with Plaintiff and his prognosis, diagnosis of Plaintiff and accommodation letter wrote on behalf of Plaintiff; records will be obtained in provable form.]

53. Robert Kelly, M.D.

[Witness' contact information: American Back Institute of Greater New Orleans, Inc., 2404 Edenborn Avenue, Metairie, Louisiana 70002; 504.833.2225. Witness can provide testimony regarding his treating Plaintiff for migraines, neck pain and lower back pain since June 11, 2013; records will be obtained in provable form.]

54. Amy Voigt, M.D.

[Witness' contact information: Department of Neurology, Neurology and Headache Medicine, LSUHealth - Healthcare Network, 2025 Gravier Street, 5th Floor, New Orleans, Louisiana 70112; 504.412.1517 [Phone]; 504.412.1518 (Fax).  Witness can

provide testimony regarding treatment of Plaintiff for migraines, and headaches;
records will be obtained in provable form.]

55. Piotr Ojejniczak, M.D.

[Witness' contact information: Department of Neurology, LSU Health – Healthcare
Network, 470 Johnson Street, 5th Floor, New Orleans, Louisiana 70112;
504.412.1517 [Phone]; 504.412.1518 (Fax). Witness can provide testimony of the
treatment of Plaintiff for migraine headaches and headaches; records will be obtained
in provable form.]

56. Eric Lonseth, M.D.

57. [Witness' contact information: Double Board Certified, Anesthesia and Pain
Management, 720 Veterans Boulevard, Suite 200, Metarie, Louisiana  70005; 7855
Howell Boulevard, Baton Rouge, Louisiana 70807; 504.327.5857 [Phone];
504.324.2569 [Fax]. Dr. Lonseth can testify with regard to pain management and
treatment of Plaintiff; records will be obtained in provable form.]

58. Wendy Manard

59. Ellyn Julia Clevenger

Energy Centre
1100 Poydras Street
Suite 2610
New Orleans, Louisiana 70163
Telephone: (504) 585-7777
Facsimile: (504) 556-2977

[Witnesses will provide testimony – when Plaintiff is the prevailing party - with
regard to work on the case, contemporaneous time records, and reasonable and
necessary attorneys' fees, consistent with the concept of private Attorneys General, as
that term is understood in context of the history of the Civil Rights Act. This

testimony is consistent also with established case law.  *See Johnson v. Railway*

*Express, Inc*, 421 U.S. 454 (1975).]

II.

**PLAINTIFF'S EXHIBITS**

1. New Orleans Police Department, Policy Manual, Policy #328, Workplace,

Discrimination/Retaliation Policy, pp. 192-194 [Policy Manual 2013/09/15].

2. New Orleans Police Department Policy Manual, Chapter 10 – Personnel, Policy

Manual 2013/09/15, pp. 754-894: Policy 1026 – Personnel Files;

Policy 1054, Limited-Duty Assignments; Policy 1055, Administrative

Reassignment; Policy 1057, Job Performance, Improvement Plan [Policy

Manual 2013/09/15] [nola.com].

3. New Orleans Police Department Procedures Manual, pp. 898-977; including

PR328, Workplace/Discriminatory Harassment/Retaliation, pp. 949-95; Policy

1014, Sick Leave and On-Duty injuries, pp. 1079-1083; PR105, Extended Sick

Leave Procedures and Family Medical Leave, pp. 1084-1090; PR1021, pp.

1091-1109        Policy Manual 2013/09/15

4. NOPD Operations Manual, Chapter 26.3.  Title:  Workplace Discrimination, Sexual

Harassment, and Retaliation; effective: 05/07/2017; revised:  replaces Policy/Procedure 328.

5. Consent Decree, *United States of America v. City of New Orleans*.

6.  Investigation of the New Orleans Police Department, United States Department

of Justice, March 16, 2011.

7.  Office of Independent Police Monitor – City of New Orleans – letter from Susan

Hutson, Independent Police Monitor letter dated July 30, 2014 to Deputy

Superintendent Arlinda Westbrook, Director, Public Integrity Bureau, New

Orleans, Louisiana 70119.

8.  U.S. Equal Employment Opportunity Commission's file – 461-2017-0199; 461-

2018-02385.

9. Newspaper Article "WDSU Investigates:  Shake-up at NOPD crime lab amid sexual

harassment allegations," discusses allegations of sexual harassment against Darryl Albert.

10. Newspaper Article "NOPD sergeant demoted for sexual harassment after 3 women report

inappropriate comments."

11. Recording of May 2018 Rule IX hearing.

12. Letters from City

March 12, 2013 letter from Ronal W. Serpas, Superintendent of Police;

June 6, 2013 letter from Stephanie M. Landry, Deputy Superintendent, Management Services

Bureau;

letter dated September 19, 2013 from Ronal W. Serpas;

letter dated September 26, 2017 from Michael S. Harrison, Superintendent of Police;

letter dated May 23, 2019 from Michael S. Harrison, Superintendent.

13. Digital audio recording, Rhett Charles [workplace, obscene comments to Plaintiff].

14. May 24, 2018 Facebook postings (various iterations of same post) by Defendant Charles

regarding Plaintiff's termination, opining that justice had been served; initially representing that

discipline had been revoked ("I got my stripes back"); later revising to "I got a piece of my joy

back;" accusing Plaintiff of "playing sick" and taking advantage of the system.

15. Social media public posting, shared to Defendant Charles' personal social media account

during working hours, appears to be dildo, showing picture of Defendant Charles in NOPD

uniform. [dated October 12, 2017], picture of woman in sexual pose, showing undergarments, "Would you have a quickie outside in broad daylight?  Message from Defendant Charles, "Put on a dress and walk pass me and find out."

16. Social media public posting, shared to Defendant Charles' personal social media account during working hours, appears to be dildo, showing picture of Defendant Charles in NOPD uniform.  Comment from Charles: "Look like a lady has options on a cold lonely night."

17. Social media public posting, shared to Defendant Charles' personal social media account during working hours, showing Defendant Charles in NOPD uniform, "Just because that dick is big don't mean that stroke is lethal"… "Lol, love the skin you in.  I love mine…… :)"

18. Newspaper Article: NOPD sergeant decommissioned, stripped of all police power after violating social media policy," June 12, 2020.

19. August 8, 2018 complaint by Shannon Reeves with attachments (14-17 above), reporting obscene and retaliatory social media postings by Defendant Rhett Charles.

20. Letter from Arlinda Westbrook to Plaintiff, finding no violation of social media policy by Defendant Rhett Charles for obscene and retaliatory Facebook posts.

21. Newspaper Article: "8 months later, NOPD officer awaits discipline for sergeant who sexually harassed her," discussing the lapse in time between Plaintiff's complaint against Defendant Rhett Charles and imposition of discipline.


22. Katrina-related pictures, taken during the time of Plaintiff's employment with the NOPD and working in the aftermath of the storm.

23. Medical records of all medical professionals who treated Plaintiff, listed as expert/medical witnesses.

28. Transcript Civil Service Commission Hearing; Docket Number 8735; Rhett

Charles versus Department of the Police, Civil Service Commission, City of New Orleans,

transcript; 173 pages.

29. Deposition of Rhett Charles, taken in the matter of Rhett Charles v. Department of Police;

Docket No. 8736, January 11, 2018: 140 pages.

30. Income Tax Records of Shannon Reeves for years 2013-2018.

31. 2014 Employee Verification document [2014].

32. Newspaper Article "NOPD officer struck by 6 bullets in 3 shootings finds new calling"

[related to Chris Abbott's accommodation].

33. Resume of Wendy Manard

34. Resume of Ellyn Clevenger

35. Public Integrity Bureau Annual Reports

36. Newspaper Article: "Database touted as latest tool in NOPD reform," April 5, 2011

37. Newspaper Article "NOPD signs Agreement with Independent Monitor," November 10,

2010.

38. Newspaper Article "Why NOPD changed French Quarter Commanders: alleged relationship

with subordinate and payroll fraud," June 16, 2020.

39. Newspaper Article "High-ranking NOPD officer investigated, accused of sending sexually

explicit messages to coworker," June 26, 2020.

40. Newspaper Article "2nd police officer suspended in growing controversy over paid details,"

May 7, 2011;

41. NOPD Twitter Post: "Congratulations to newly promoted Eight District Lt. Bradley

Rhodes!" March 3, 2017.

42. NOPD Facebook Post, March 3, 2017: Chief Harrison today officially promoted Bradley Rhodes of the NOPD Eighth District.

43. Newspaper Article: "Fox 8 Investigates: NOPD detail paid $250,000 since November," May 3, 2011 [discussing Bradley Rhodes' violation of paid detail policy].

44. Newspaper Article: "NOPD could fulfill consent decree in early 2020, judge says; academy's progress praised," December 17, 2019.

45. Copy of Plaintiff's complaint of harassment/retaliation by Bradley Rhodes.

46. Newspaper Article: "Darryl Albert promoted to New Orleans police deputy superintendent," August 11, 2011.

47. Newspaper Article: "Veteran NOPD Captain Jenerio Sanders retires, setting off chain of personnel moves," January 24, 2020.

48. Investigation file regarding recent sexual harassment complaint against Defendant Jenerio Sanders; files regarding previous complaints [once obtained in discovery process].

49. Investigation file(s) regarding sexual harassment complaint(s) against Defendant Walter owers; files regarding previous complaints [once obtained in discovery process].

49. Photographs/pictures/images of Defendant Rhett Charles on ESPN, on field at Saints games, in NOPD uniform, working detail as security and/or bodyguard for coach Sean Peyton.

50. Reports of the Consent Decree Monitor's Office.

51. Investigation files regarding sexual harassment complaints against Darryl Albert [once obtained in discovery process].

52. Investigation files regarding sexual harassment complaints against Bradley Rhodes [once obtained in discovery process].

53. Investigation files regarding sexual harassment complaints against members and/or employees of the Department [once obtained in discovery process].

54. Documents related to accommodations provided to male officers with disabilities [once obtained in discovery process].

55. Documents related to accommodations provided to officer, daughter of male official [once obtained in discovery process].

56. Documents related to "full duty" status accorded to accommodated male officers with disabilities [Chris Abbott, et al., once obtained in discovery process].

57. Documents related to perquisites awarded to accommodated officers with disabilities, such as extra-duty details [once obtained in discovery process].

58. Documents related to perquisites and/or promotion(s) accorded to Defendant Rhett Charles, since Plaintiff's complaint [once obtained in discovery process].

58. Resume of Wendy Manard.

59. Resume of Ellyn Clevenger.

60. Time and billing records [will be supplemented time to time]

61. Physician's Examination Certification(s)

62. N.O.P.D. Report of Injuries document

63. Letter from Plaintiff to Chief Arlinda Westbrook

64. Letter to EEOC from Shannon Reeves dated April 27, 2014

65. Dr. W.V. McDermott, C. Psych. letter dated May 22, 2014

66. Bureau Chief Arlinda P. Westbrook's letter dated 032.28.2014, suspension of police powers.

67. Shannon Reeves letter dated 04.27.2014, complaint surrounding illegal revealing of her

medical records.

68. Form D1-1:  Initiation of A Formal Disciplinary Investigation dated 06.20.2014

69. Letter dated June 18, 2013 from Robert Kelly

70. Letter dated 07.25.2016 from Major Raymond C. Burkart to Shannon Reeves

71. Letter dated 09.26.2017 from Superintendent Michael Harrison to Shannon
Reeves.

72. Letter dated 09.19.2013 from Superintendent Ronal W. Serpas to Shannon
Reeves.

73. Letter dated 10.23.2017 from Shannon T. Reeves to Superintendent of Police.

74. Civil Service finding dated 10.05.2016; Docket No. 8735, Rhett Charles

75. Investigation file regarding recent sexual harassment complaint against Defendant Jenerio
Sanders; files regarding previous complaints [once obtained in discovery process].Newspaper
Article: "Shake-up at NOPD crime lab amid sexual harassment allegations," March 29, 2019
[discussing, *inter alia*, complaints of sexual harassment against Darryl Albert]

76. Investigation file regarding sexual misconduct/misconduct related to relationship with
subordinate and providing favors/perquisites as quid pro quo, against Octavio Baldassero [once
obtained in the discovery process].

77. Investigation file regarding concomitant sexual misconduct/misconduct complaint against
subordinate mentioned in #76 [once obtained in discovery process].

76. Employment Authorization Form dated 04.16.2012

77. Newspaper Article, dated Thursday, September 15, 2015

78. Newspaper Article: "NOPD chief shakes up leadership at beleaguered sex crimes unit,"
March 2015.

79. Newspaper Article: "New Orleans settles suit filed by families

of Kim Groves, woman murdered on cop's order in 1994," April 2018.

80. Newspaper Article "3 NOPD officers coordinating special events work can't do it

themselves, Harrison rules," February 2015, discussing Defendant Walter Powers.

81. City of New Orleans Chief Administrative Office Policy Memorandum, dated

January 28, 2019, Subject: "Sexual Harassment Policy and Complaint/Investigation

Procedures[.]"

82. Brief on Appeal by the Department of Justice, Civil Rights Division, in the

case captioned *Walter Powers, et al. v. United States of America, et al.*; Case No. 14-30444, in

the United States Court of Appeals for the Fifth Circuit.

83. Rules of the Civil Service Commission City of New Orleans," published

February 13, 2014.

84. Newspaper Article: "Arrests by French Quarter undercover unit scrutinized after 'disconnect'

between body-cam video, testimony," May 2020.

85. Newspaper Article: "NOPD task forces under a glare as troubles highlight limits of federal

consent decree," May 2020.

86. Audio Recording of Christopher Johnson, officer assigned to investigate complaint by

Plaintiff against Defendant Charles.

87. Recording of Sergeant Barrett Dewall.

88. Audio recording of Courtney Hebert, civilian employee with Department.

89. Dr. Piotre Ojejniczak, MD, Neurologist/Epileptologist; letter dated 02/07/2020

90. Contract of employment/civil rights litigation.

91. excerpted notes from Plaintiff's calendars and agendas, electronic and physical, from January 2014 to June 2018, including, *inter alia*, notations regarding consultation with counsel for Defendant Burkart regarding disabilities and/or harassment and/or retaliation.

92. excerpted notes from Plaintiff's personal journals and diaries from January 2014 to June 2018, including, *inter alia*, notations regarding consultation with counsel for Defendant Burkart regarding disabilities and/or harassment and/or retaliation.

93. Interoffice Correspondence – Burkart to Reeves dated 04.28.2016.

94. Letter dated 07.25.2016 from Burkart to Reeves.

95. Handwritten letter by Reeves regarding complaint.

96. Documentation of Plaintiff's income, including income tax records, W-2s, and the like.

97. Documents related to Plaintiff's pension, and termination of Plaintiff's pension plan in 2015.

98. Documents related to Plaintiff's health insurance, and termination of Plaintiff's health insurance with the NOPD in May 2018.

99. Copy of Letter from Civil Service Commission dated December 6, 2018, Regarding Rhett Charles.

100. Photographs of Plaintiff undergoing medical treatment/supervision.

101. New Orleans, Louisiana Code of Ordinances, Chapter 2 – Administration – Article VII – Ethics (in particular note Section 2-767: the code of ethics applies to all employees, whether classified or unclassified; Section 2-768 "public officials and employees must adhere to high ethical standards not simply to avoid sanctions or criticism, but because it is the right thing to do;" Section 2-769 – public employees are bound to uphold the laws; foster respect of government; observe the highest standards of morality.

102. Newspaper Article: "Ex-New Orleans City employees accuse bosses of sexual harassment, threats in new lawsuit," June 2019.

103. New Orleans Police Department Manual Chapter 26.2.1.

104. NOPD Operations Manual Chapter 26.2.1: version effective 5/15/2016; version revised 5/21/2017, effective 5/15/2016; version effective 5/15/2016, revised 3/18/2018; chart noting differences; disciplinary mechanism for sexual harassment added 5/21/2017.

105. Plaintiff's employment performance evaluations.

106. Documentation of Plaintiff's computation of damages.

107. Any documents produced by Defendants in discovery.

108. Any documents later obtained/discovered by the Plaintiff and timely supplemented herein.

109. Any documents necessary for rebuttal.

DATE:  July 10, 2020.

Respectfully submitted,



_____
Wendy Manard (#29622)
Ellyn J. Clevenger (#32395)
Energy Centre: 1100 Poydras Street
Suite 2610
New Orleans, Louisiana 70163
Telephone: (504) 585-7777
Facsimile: (504) 556-2977

ATTORNEYS FOR THE PLAINTIFF
SHANNON REEVES