UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANNON REEVES** | **CIVIL ACTION NO. 19-10766** |
| **VERSUS** | **SECTION "T" JUDGE GUIDRY** |
| **CITY OF NEW ORLEANS, ET AL.** | **MAG. DIV. (5) MAGISTRATE JUDGE NORTH** |

MEMORANDUM IN SUPPORT OF
DEFENDANT, THE CITY OF NEW ORLEANS'
<u>MOTION FOR SUMMARY JUDGMENT</u>

**MAY IT PLEASE THE COURT:**

Defendant, the City of New Orleans ("Defendant" or the "City"), without waiving any applicable defenses, objections, and arguments, submits this Memorandum in Support of its Motion for Summary Judgment, seeking dismissal of the remaining claims of Plaintiff, Shannon Reeves, for sexual harassment and hostile work environment for conduct after June 24, 2016 under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").[1] The City submits that there are no genuine issues of material fact in dispute; as such, Plaintiff's claims against the City for sexual harassment and hostile work environment should be dismissed in their entirety, with prejudice, at Plaintiff's costs.[2]

**I.     RELEVANT PROCEDURAL HISTORY**

---

[1] *See* R. Doc. 166, generally, and at pg. 11 (Order on Motion to Dismiss stating "the Court finds Plaintiff's allegations that occurred prior to June 24, 2016 are time-barred"); R. Doc. 201 (Order on Motion for Reconsideration); R. Doc. 207 (Joint Motion for Partial Dismissal with Prejudice); R. Doc. 208 (Order on Joint Motion for Partial Dismissal with Prejudice).

[2] Defendant originally filed this motion for summary judgment on December 20, 2022. (R. Doc. 214). On January 11, 2023, the Court granted Plaintiff's Ex Parte/Consent Motion to Continue Submission Date of Defendant's motion for summary judgment. (R. Doc. 217). In the Court's order, it stated that "the Court will treat the Motion to Continue as a Motion to Withdraw Defendant's Motion for Summary Judgment without prejudice, reserving Defendant's right to refile its Motion for Summary Judgment in accordance with the Court's modified Scheduling Order at R. Doc. 215." *Id*. Defendant has diligently cooperated with Plaintiff in scheduling depositions in this matter; however, Plaintiff unilaterally cancelled her own deposition and failed to notice depositions of available Defendant witnesses no fewer than on three separate occasions. *Id*. Defendant submits that Plaintiff has had a reasonable opportunity to prosecute her case and that summary judgment is proper especially given the circumstances of this case.

1

Plaintiff, a former female police officer, filed suit against the City of New Orleans and a number of Individual Defendants for alleged sexual harassment and hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, and failure to accommodate, and retaliation under the Americans with Disabilities Act. R. Doc. 1. Plaintiff later amended her complaint to assert a custom, practice, and procedure claim concerning the City's purported policy with respect to sexual harassment under 42 U.S.C. § 1983. R. Doc. 42-2.

On August 6, 2020, the Court issued an Order (R. Doc. 166) granting in part and denying in part four related motions to dismiss by the named defendants. The Court ruled, *inter alia*, that Plaintiff's Title VII claims and ADA claims against the Individual Defendants were dismissed with prejudice; that "Plaintiff's allegations that occurred prior to June 24, 2016 are time-barred" and dismissed; and that Plaintiff's Title VII retaliation claims are dismissed with prejudice. R. Doc. 166 at pgs. 9-10, 11, 13-14. On September 7, 2022, this Court issued an Order (R. Doc. 201) granting named defendants' motions for reconsideration and ruled that Plaintiff's ADA claims against the City and claims under 42 U.S.C. § 1983 are dismissed as prescribed. R. Doc. 201 at pg. 7. It is undisputed that the *only* surviving claims in this case are Plaintiff's claims for sexual harassment and hostile work environment for conduct that occurred after June 24, 2016 under Title VII against Defendant.[3]

## II.   RELEVANT FACTUAL BACKGROUND

Plaintiff began working for the City as a police officer in July 1998.[4]  During Plaintiff's employment and the relevant 2016 timeframe, the City and the New Orleans Police Department

---

[3] *See* R. Doc. 166 at pgs. 9-10, 11, 13-13; R. Doc. 207 (Joint Motion for Partial Dismissal with Prejudice); R. Doc. 208 (Order on Joint Motion for Partial Dismissal with Prejudice).
[4] *See* Exhibit 1, Transcript of March 20, 2018 Hearing at pg. 11, *Rhett Charles v. Department of Police*, Civil Service Commission, City of New Orleans, Docket Number 8735.

("NOPD"), had policies in place prohibiting discrimination and harassment in the workplace.[5] During the relevant 2016 timeframe, NOPD Policy 328 – Workplace Discrimination/Harassment/Retaliation was in place with the stated purpose "to prevent Department members from being subjected to discrimination or sexual harassment."[6] Policy 328.2 states in relevant part:

> The New Orleans Police Department is an equal opportunity employer and is committed to creating and maintaining a work environment that is free of all forms of discriminatory harassment, including sexual harassment and retaliation. The Department will not tolerate discrimination against employees in hiring, promotion, discharge, compensation, fringe benefits and other privileges of employment. The Department will take preventative and corrective action to address any behavior that violates this policy or the rights and privileges it is designed to protect.[7]

Policy 328.3.1 stated in relevant part:

> The Department prohibits all forms of discrimination . . . Discriminatory harassment, including sexual harassment, is verbal or physical conduct that demeans or shows hostility or aversion toward an individual based upon that individual's protected class. It has the effect of interfering with an individual's work performance or creating a hostile or abusive work environment.
> . . .
>
> Conduct that may, under certain circumstances, constitute discriminatory harassment can include making derogatory comments, authoring crude and offensive statements or remarks, making slurs or off-color jokes, stereotyping, engaging in threatening acts, making indecent gestures, pictures, cartoons, posters, or materials, making inappropriate physical contact . . . Such conduct is contrary to department policy and to the department's commitment to a discrimination-free work environment.[8]

The policy instructed: "Any member who believes, in good faith, that he/she has been discriminated against, harassed, subjected to retaliation, or who has observed harassment or discrimination, is encouraged to promptly report such conduct in accordance with the procedures

---

[5] *See* Exhibit 2, Declaration of Lieutenant Christopher Johnson; *See also* Exhibit 2-A, Policy 328 New Orleans Police Department Policy Manual.
[6] *Id.*
[7] *See* Exhibit 2-A.
[8] *Id.*

set forth in this policy."⁹  Employees have several options for reporting as well as questions regarding discrimination or sexual harassment, including contacting a supervisor, Employee Relations, the Personnel Director or the Chief Administrative Officer.¹⁰  In addition, NOPD Operations Manual Chapter 52.1.2 – Misconduct Complaints Investigator Responsibilities sets forth the standards in the investigation of misconduct complaints by the Public Integrity Bureau.¹¹  The same policy explains how Department Personnel may fill out a Complaint Form – "The universal form that any person may use to file a complaint against a member of the New Orleans Police Department. Any person can file a complaint without filing out this form (e.g., a complaint may be communicated verbally or online), and a complaint shall not be disregarded if a person refuses to, or cannot, complete this form."¹²  Critical to the Court's consideration of this Motion is the fact that Plaintiff received these policies upon hire and was given access to them throughout her employment.¹³

From 2015 to late 2016 for a period of approximately a year and a half, Plaintiff was assigned to work in the Alternative Police Reporting Unit ("APR").¹⁴  The assignment was a limited duty position where she worked the morning watch from 6:25 AM to 3:00 PM.¹⁵  At the initial location of APR, Plaintiff worked with approximately seven or eight police officers who were also on limited duty in the back corner of a large warehouse facility.¹⁶  Her job duties in APR included taking police reports of minor incidents such as lost cell phones, passports, and stolen vehicles over the phone.¹⁷  Her supervisor was then Sergeant Rhett Charles.¹⁸  Plaintiff

---

⁹ *Id.*
¹⁰ *Id.*
¹¹ Exhibit 2-B - NOPD Operations Manual Chapter 52.1.2 – Misconduct Complaints Investigator Responsibilities.
¹² Exhibit 2-B, pg. 1.
¹³ *See* Exhibit 2- Declaration of Christopher Johnson at Paragraph 4.
¹⁴ *See* Exhibit 1 at pg. 12.
¹⁵ *See* Exhibit 1 at pg. 15.
¹⁶ *See* Exhibit 1 at pg. 16-17.
¹⁷ *See* Exhibit 1 at pg. 12-13.

4

described her interactions with Charles as initially cordial.[19] But she alleges Charles began sexually harassing her a month after the other supervisor of APR left in January 2016.[20] Plaintiff alleges two isolated incidents with Charles in February and March 2016 which this Court has held to be time-barred.[21] Plaintiff did not initially report either incident to anyone of higher rank but believed that she had to go to the Public Integrity Bureau or "PIB."[22] Plaintiff alleges a third incident in the summer of 2016 after she returned to work from a period of illness.[23] During this incident, she claims that Charles called her into his office as she was about to leave for a shift change and made a comment about her breast.[24] She contends that they were alone during this initial comment but that a male officer walked into Charles' office to ask a question.[25] She alleges that after the male officer left, Charles made additional comments about Plaintiff's breasts and having sex with Plaintiff of which she made an audio recording on her cell phone.[26] Plaintiff did not provide the recording of this third alleged incident to anyone until December 2016, months later, first to Ursula Price of the Independent Police Monitor and then Sergeant Christopher Johnson who handled an investigation into Charles.[27] Also, after she made the recording of the third incident, she did not talk to anyone about the incident or the recording aside from non-supervisory co-workers in APR including Troy Williams and Keith Ambrose.[28] Plaintiff alleges that approximately a month after the recording and the third incident, there was a fourth and final incident where she was sitting at her desk and Charles tapped on the window for

---

[18] *See* Exhibit 1 at pg. 12.
[19] *See* Exhibit 1 at pg. 13.
[20] *See* Exhibit 1 at pg. 13-14.
[21] *See* Exhibit 1 at pg. 23, 27.
[22] *See* Exhibit 1 at pg. 24-26; 29.
[23] *See* Exhibit 1 at pg. 31-32.
[24] *See* Exhibit 1 at pg. 33.
[25] *See* Exhibit 1 at pg. 34.
[26] *See* Exhibit 1 at pg. 36-37.
[27] *See* Exhibit 1 at pg. 43-44.
[28] *See* Exhibit 1 at pg. 46-47.

her to come into his office.[29] She claims that during this incident, Charles made another comment about her breast and Plaintiff walked out.[30] Critically, there were no other incidents with Charles after this fourth incident.[31]

On October 29, 2016, Plaintiff's fellow co-worker, Troy Williams, brought a complaint alleging that Charles inappropriately placed his hand on Williams.[32] In his complaint, Williams reported that Charles was sexually harassing females in the office, including the Plaintiff but that he had not personally witnessed any of the events.[33] Following the fourth alleged incident with Charles, Plaintiff was not at work for a period of time until Williams brought his complaint against Charles.[34] In connection with investigating Williams' complaint, Williams' supervisor, Walter Powers, came to speak with Plaintiff on or around November 23, 2016; however, Plaintiff refused to speak with him.[35] A week after Powers came to speak to Plaintiff, Plaintiff went to the Independent Police Monitor to make a complaint and play her recording of the third alleged incident.[36] Prior to her meeting with the Independent Police Monitor, she did not tell the Public Integrity Bureau or the Independent Police Monitor about Charles' alleged conduct.[37] While Plaintiff did not look at the policy for making a complaint, she knew that she could go to the Public Integrity Bureau to make her complaint against Charles.[38]

---

[29] *See* Exhibit 1 at pg. 47-51.
[30] *Id.*
[31] *See* Exhibit 1 at pg. 51-52.
[32] *See* Exhibit 1 at pg. 120; *See also* Exhibit 2-C – Initiation of a Formal Disciplinary Investigation Control Number 2016-0707-R.
[33] *Id.*
[34] *See* Exhibit 1 at pg. 52-53.
[35] *See* Exhibit 1 at pg. 52-53; Exhibit 3 – EEOC Intake Questionnaire.
[36] *Id.*
[37] *See* Exhibit 1 at pg. 55-56.
[38] *See* Exhibit 1 at pg. 60-62.

On November 8, 2016, Sergeant Christopher Johnson was assigned to investigate the complaint of sexual harassment and inappropriate conduct against Charles.[39] Johnson did not investigate the original complaint by Williams which was assigned to a different investigator.[40] In connection with the investigation against Charles, approximately seventeen witnesses were interviewed by Johnson.[41] Johnson interviewed Plaintiff, as well as several other witnesses, on December 6, 2016; at this interview, Plaintiff provided Johnson with details regarding the alleged incidents with Charles.[42] Most of the witnesses Johnson interviewed did not witness any inappropriate or harassing conduct.[43] Three of the witnesses including Plaintiff and Female Officer One and Female Officer Two alleged inappropriate conduct.[44] Female Officer One provided statements about inappropriate comments made by Charles while she worked in APR.[45] Female Officer One knew about the policy to make complaints but decided not to use it.[46] She also testified that she had discussions with Plaintiff about going to the Public Integrity Bureau.[47] Female Officer Two testified regarding having issues with Charles while in the police academy in 2004 but not while she worked at APR with Plaintiff.[48] Critically, shortly following the initial interviews conducted by Johnson, on December 18, 2016, Charles was transferred from the APR Unit to the Sixth District Field Operations Bureau.[49] Johnson continued to interview additional witnesses from January 19-30th.[50]

---

[39] *See* Exhibit 1 at pg. 119; *See also* Exhibit 2-D – Interoffice Memorandum dated February 15, 2017.
[40] *See* Exhibit 1 at pg. 121; *See also* Exhibit 2-C.
[41] *See* Exhibit 1 at pg. 138; *See also* Exhibit 2-D.
[42] *See* Exhibit 1 at pg. 122; *See also* Exhibit 2-D.
[43] *See also* Exhibit 2-D.
[44] *See* Exhibit 1 at pg. 138.
[45] *See* Exhibit 1 at pg. 123.
[46] *See* Exhibit 1 at pg. 60-62.
[47] *Id.*
[48] *See* Exhibit 1 at pg. 90.
[49] *See* Exhibit 2-D at CITY_013272.
[50] *See* Exhibit 2-D.

PD.40575224.1

Shortly after his final witness interview, on February 14 and 15, 2017, Johnson sent a Notice to the Accused of Completed Investigation and Notice of Pre-Disciplinary Hearing to Charles and a detailed Interoffice Correspondence outlining his investigation findings and recommendations on to the then superintendent of the NOPD, Michael Harrison. Johnson determined that it was more likely than not that Charles had engaged in comments of a sexual nature at the workplace with other employees.[51] He sustained violations under Rule 3, paragraph 1 concerning violation of professional conduct, Rule 4, Paragraph C for neglect of duty of NOPD Policy 328 Workplace Discrimination/Harassment/Retaliation, and Rule 4, Paragraph 4B for failure in his responsibility as a sergeant to not engage in inappropriate conduct and prevent it.[52] Disciplinary proceedings against public employees of the City, including Charles, are governed by Rule IX of the Civil Service Code.

NOPD supervisory personnel concurred with Johnson on his findings after review of his report including Denise Thomas on March 6, 2017, Gwen Nolan on April 6, 2017, Arlinda Westbrook on April 18, 2017, and Michael Harrison on April 18, 2017.[53] On March 16, 2017, Johnson recommended that Charles receive urgent training on NOPD Policy 328 and warned that further violations could result in additional disciplinary action.[54]

Paul Noel, who was the then Deputy Chief in charge of supervising the Field Operations Bureau, participated in the November 13, 2017 disciplinary hearing of Charles.[55] Noel, Chief Arlinda Westbrook, and Rannie Mushatt were part of the hearing panel and reviewed the investigation completed by Johnson and exhibits to the investigatory report.[56] The panel

---

[51] *See* Exhibit 1 at pg. 128 and *See* Exhibit 2-E- February 14, 2017 Notice to the Accused of Completed Investigation and Notice of Pre-Disciplinary Hearing.
[52] *See* Exhibit 1 at pg. 129-130.
[53] *See* Exhibit 2-D at CITY_013261-13278.
[54] *See* Exhibit 2-F – March 16, 2017 Policy, Tactics, and/or Training Recommendation from Christopher Johnson.
[55] *See* Exhibit 1 at pg. 92.
[56] *See* Exhibit 1 at pg. 93.

sustained all charges against Charles and recommended a demotion based upon two of the charges as well as a one day suspension.[57]  According to Noel, the alleged conduct by Charles was not tolerated and demotion was considered an appropriate sanction because the panel "completely lost confidence in Sergeant Charles' ability to function as a supervisor."[58] The demotion was in line with the NOPD penalty matrix.[59] Noel further testified that Charles had worked under his command in the past and he never had any similar allegations against Charles come forward prior to the one which resulted in his sanctions.[60]

On May 23, 2018, Plaintiff was terminated under Rule IX for her inability to perform her job duties,[61] which was completely unrelated to her 2016 complaint against Charles.

I.   **SUMMARY OF ARGUMENT**

Dismissal of Plaintiff's sole remaining claim and this lawsuit with prejudice is clearly warranted based upon the undisputed material facts.  The undisputed material facts show that Plaintiff cannot satisfy her *prima facie* burden of proof on her remaining Title VII sexual harassment and hostile work environment claim, particularly on the fifth element – that the City knew or should have known of the alleged harassment by Charles against Plaintiff and failed to take prompt remedial action.  The undisputed facts show that as soon as the City knew of the alleged harassment by Charles through the complaint brought by another officer, it immediately conducted a detailed investigation, and transferred Charles out of Plaintiff's department.  Critically, Plaintiff did not face any further alleged harassment after the City took prompt remedial action.  Summary judgment should be granted and Plaintiff's remaining claims against the City should be dismissed with prejudice.

---

[57] *See* Exhibit 1 at pg. 98.
[58] *See* Exhibit 1 at pg. 103-104; 106-107.
[59] *See* Exhibit 1 at pg. 108.
[60] *See* Exhibit 1 at pg. 113.
[61] *See* Exhibit 4, May 23, 2018 Rule IX Letter to Shannon Reeves attached to *Shannon Reeves vs. Department of Police*, Docket No. 8804, City Civil Service Commission.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if there are no genuine issues of material fact. A fact is material only if it is essential to the plaintiff's cause of action under an applicable theory of recovery and the plaintiff could not prevail without it. *Celotex v. Catrett*, 477 U.S. 317 (1986). The movant's burden is to merely point out the absence of evidence supporting the nonmovant's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996).

Once the movant meets this burden, the nonmovant must go beyond the pleadings and "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence support[s] her claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Allegations without substance will not defeat summary judgment. *Celotex*, 477 U.S. at 321. If the nonmovant fails to meet this burden, the motion for summary judgment must be granted. *Stults*, 76 F.3d at 656-57 (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995)).

## III. LEGAL ARGUMENTS

### a. Plaintiff's Title VII Claim for Sexual Harassment and Hostile Work Environment Should Be Dismissed.

Fifth Circuit precedent is clear to the effect that to establish a hostile work environment claim under Title VII, Plaintiff must show: "(1) she is a member of a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment affected a term, condition, or privilege of her employment; *and* (5) her employer knew or should have known of the harassment and failed to take prompt remedial action." *Gibson v. Verizon Servs. Org.*, 498 F. App'x 391, 394 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). For harassment on the basis of a protected characteristic to affect a term, condition, or privilege of employment, it must be

"sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 268 (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). Plaintiff's claims clearly fail on prongs four and five.

In determining whether a hostile work environment exists, courts consider the "totality of the circumstances," including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or "a mere offensive utterance," and whether it interferes with the employee's work performance. *Id.* at 394. The Fifth Circuit has reiterated that these factors "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *West v. City of Houston*, 960 F.3d 736, 742 (5th Cir. 2020). "'In order to be actionable under [Title VII], a[n] . . . objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). Importantly, mere offensive utterances, discourtesy, rudeness, offhand comments, and isolated incidents "rarely poison the employee's working conditions to the extent demanded for liability." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999).

As to the discrete period that this Court has held was properly administratively exhausted (after June 24, 2016), the undisputed material facts do not show that the two isolated alleged incidents between Plaintiff and Charles consisting of sexual remarks satisfy the sufficiently demanding standards of stating a hostile work environment claim. For instance, in *Hockman v. Westward Comms.*, LLC, 407 F.3d 317 (5th Cir. 2004), the Fifth Circuit found that conduct was neither severe nor pervasive where the plaintiff complained that a male employee: made remarks about another employee's body to her; would brush up against her breasts and behind; on one

11

occasion, slapped her behind with a newspaper; once attempted to kiss her; on more than one occasion, asked her to come in early so that they could be alone together; and on one occasion stood in the doorway of the ladies' restroom as she was washing her hands.  407 F.3d at 321-22. The Fifth Circuit held that the comments and actions, while "boorish and offensive," were not severe and amounted to "simple teasing" and "offhand comments." *Id.* at 328.  The attempted kiss and the bathroom incident also were considered "isolated incidents that were not serious." *Id.*

But even if the two alleged incidents could rise to the level of "severe" or "pervasive," (which is denied), as explained above, the record is clear that the City immediately intervened and took "prompt remedial action" when it received notice.  "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 329 (5th Cir. 2009).  An evaluation of whether the employer's response is sufficient "necessarily depend[s] on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps." *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399-400 (5th Cir. 1996).

As an initial matter, Plaintiff failed to take advantage of the available remedial measures for a period of time by informing the City of the alleged harassment by Charles until December 2016 in connection with a complaint made by Williams. It is undisputed that Plaintiff did not make any reports to supervisory personnel or the PIB about Charles' alleged conduct until months after it occurred. Critically, when she did, the City took prompt remedial actions including transferring Charles, requiring that he do training on NOPD Policy 328 – Workplace Discrimination/Harassment/Retaliation, and ultimately demoting him and stripping him of his supervisory duties. These remedial measures were effective as Plaintiff admits she was not

sexually harassed after the fourth alleged incident in August 2022. Plaintiff undisputedly knew she could bring a complaint with PIB or the Independent Police Monitor (which she ultimately did) but chose not to so until a later period of time.

Workplace harassment victims have an affirmative obligation to report alleged harassment. *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 299-300 (5th Cir. 2001). An employer "cannot be held liable for conduct of which it had no knowledge." *Id.* at 299. The Fifth Circuit law on this issue was aptly summarized as follows:

> The Fifth Circuit has not articulated a bright-line rule with respect to how long a plaintiff may reasonably wait to report sexual harassment. Although circuit precedent suggests that a three month delay in reporting supervisor sexual harassment may not be excessive, *Watts*, 170 F.3d at 510-11, the Fifth Circuit has noted that an eight or nine month delay is "more problematic." *Mota*, 216 [sic] F.3d at 526; *see also Wyatt*, 297 F.3d at 412-413 (affirming summary judgment where plaintiff waited five months to report alleged sexual harassment); *Casiano*, 213 F.3d at 287 (holding that plaintiff's failure to report fifteen sexual propositions by a supervisor for "several months" was unreasonable); *Taylor v. Nickles & Dimes, Inc.*, 2002 WL 1827657, at *5 (N.D. Tex. 2002) (holding that plaintiff's failure to report sexual harassment for five months was unreasonable).

*Duhé v. U.S. Postal Service*, 2004 WL 439890, *14 (E.D. La. 2004) (summary judgment granted where the plaintiff did not report the alleged incidents of harassment "to anyone with authority to address the harassment" until one year after the first incident and nine months after the second incident); *see also Woods*, 274 F.3d at 299-300; *Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317, 329-330 (5th Cir. 2004).

In *Casiano v. AT&T Corp. et al.*, 213 F.3d 278, 281-282 (5th Cir. 2000), after filing suit, the plaintiff complained of demeaning conduct that occurred over a four-month period. *Id.* Affirming summary judgment for the employer, the Fifth Circuit held:

> [T]the only reasonable conclusion we can reach is that he unreasonably failed to take advantage of any preventative or corrective opportunities afforded him by AT&T or to avoid harm otherwise. By his own account, he suffered at least fifteen

13

> propositions yet never reported any of the incidents until months after the last of them. In his earlier complaints, he never raised one specter of direct sexual overtures, even implicitly.

*Id.* at 287; *see also Nguyen v. Baker Hughes Inc.*, 115 Fed.Appx. 188, 189 (5th Cir. 2004).

"Where an employer has 'provided a proven, effective mechanism for reporting and resolving complaints of sexual harassment, available to the employee without undue risk or expense,' and the plaintiff 'unreasonably failed to avail herself of the employer's preventative or remedial apparatus . . . no liability should be found against the employer who has taken reasonable care." *Giddens v. Community Educ. Centers, Inc.*, 540 Fed.Appx. 381, 389 (5th Cir. 2013). *See Hockman*, 407 F.3d at 329 (affirming summary judgment because the employer "took prompt remedial action as a matter of law, because Hockman unreasonably failed to take advantage of corrective opportunities provided by Westward").

Here, Plaintiff's sexual harassment and hostile work environment claim must be dismissed because Plaintiff gave no opportunity to investigate or take remedial action until December 2016. According to Plaintiff's own testimony, the City's remedial efforts were effective as she was not faced with any further sexual harassment by Charles after the investigation and his transfer. *E.g., Stewart*, 586 F.3d at 329-30 ("That the harassment may have resumed due to a subsequent decision entirely unconnected to the remedial action is of no moment. To hold otherwise would cast doubt on the safe harbor of prompt remedial action."). The City's prompt intervention cuts off any liability under Title VII.

Therefore, Plaintiff's sole remaining claim for sexual harassment and hostile work environment should be dismissed, with prejudice.

## IV. CONCLUSION

For the reasons above, the undisputed material facts show that Plaintiff's sole remaining

claim for sexual harassment and hostile work environment fail as a matter of law and should be dismissed in its entirety.

Respectfully submitted,

**PHELPS DUNBAR LLP**
BY:    */s/ Kim M. Boyle*
      KIM M. BOYLE (#18133)
      BRANDON E. DAVIS (#29823)
      REBECCA SHA (#35317)
      365 Canal Street • Suite 2000
      New Orleans, Louisiana 70130-6534
      Telephone: (504) 566-1311
      Telecopier: (504) 568-9130

      **ATTORNEYS FOR THE CITY OF NEW ORLEANS**